## STATE EX REL. HORACE W. ROBERTS v. FRANK HENSE.[1]

### December 8, 1916.

### Nos. 20,211—(300).

**Insane person — examination before probate court — jurisdiction.**

1. Under the provisions of the statutes relating to examination and commitment of persons alleged to be insane, the probate court has no jurisdiction to inquire into the mental condition of a person not actually within the territorial limits of the county, whether a legal resident of the county or not.

**Writ of prohibition granted.**

2. Prohibition lies in the instant case, where the court is about to exercise judicial power in a matter in which it never had jurisdiction and where there is no adequate remedy by appeal, *certiorari* or writ of error.

Upon the relation of Horace W. Roberts, as attorney for Anna Breckenridge Ratcliffe, the supreme court granted its alternative writ of prohibition commanding Frank Hense, Esq., as judge of probate of Aitkin county, to refrain from any further proceeding in the matter of the insanity of Anna Breckenridge Ratcliffe until the further order of the court and to show cause why he should not be absolutely restrained from any further proceeding in the matter. Writ made absolute.

*William P. & H. W. Roberts, George H. Sullivan* and *E. H. Krelwitz,* for relator.

*Louis H. Hallum* and *William O'Hara,* for respondent.

[1] Reported in 160 N. W. 198.

SCHALLER, J.

Alternative writ of prohibition issued to Frank Hense, as judge of the probate court of Aitkin county, Minnesota, on petition of Horace W. Roberts.

It appears from the writ and return that for some years prior to June 3, 1916, Mrs. Anna Breckenridge Ratcliffe had resided with her husband, John Jay Ratcliffe, at Aitkin, in this state. On June 3, 1916, she went to Minneapolis for the purpose and with the intention of bringing an action against her husband for divorce. Since that date she has continuously resided in Minneapolis.

About the twenty-first of June, 1916, she brought suit against her husband in the district court of Aitkin county for divorce. On June 23 Dr. Ratcliffe filed a petition in the probate court of Aitkin county, alleging that his wife was then within Aitkin county; that she would not appear voluntarily; that she was insane, and prayed that she be brought before such probate court for examination as to her sanity. On the same day, the probate court issued its order to the sheriff of Aitkin county commanding him to bring Anna B. Ratcliffe before the court for examination as to her mental condition. Thereupon the sheriff, accompanied by the husband, went to Hennepin county and attempted to serve the warrant on the wife at a hospital in Minneapolis where she was seriously ill with fever. The hospital authorities declined to allow either the sheriff or the husband to see the sick woman, and, on the petition of friends, the district court of Hennepin county restrained the sheriff and the husband from attempting to serve the process until further order of the court.

Thereafter, and on the twentieth day of July, Dr. Ratcliffe filed a petition in the probate court of Aitkin county, alleging that his wife was incompetent to manage her affairs, and prayed that he be appointed her guardian. A citation was issued, which was not personally served, but was delivered to the superintendent of the hospital in Minneapolis where Mrs. Ratcliffe was still undergoing treatment. On the return day, her attorneys appeared specially and objected to the proceedings and to the jurisdiction of the probate court. The court overruled the objection, proceeded to a hearing and appointed the husband her guardian. From

the order appointing a guardian, she appealed to the district court of Aitkin county.

On September 14, 1916, Mrs. Ratcliffe's attorneys appeared in the probate court of Aitkin county, and secured an order to show cause why the petition in the insanity proceedings, and the process issued to the sheriff therein, should not be vacated and set aside, on the ground that the probate court of Aikin county had no jurisdiction in the matter. A hearing was had September 29, 1916, at which time affidavits were read to the effect that Mrs. Ratcliffe was not a resident of Aitkin county at the time the proceedings were commenced. Counter affidavits were read asserting that she was such a resident, and on October 10, the probate court discharged the order to show cause.

The divorce case was at issue and was placed on the September, 1916, general term calendar of the Aitkin county district court for trial, as was also the appeal from the order appointing Dr. Ratcliffe the guardian of his wife. Mrs. Ratcliffe came to Aitkin county with her attorneys to attend the district court as a party and witness in the divorce suit and in the case appealed from the probate court. She arrived at Aitkin on October 9. The causes were reached October 10 about 5 o'clock p. m. and continued until the morning of October 11. Immediately upon her arrival, Mrs. Ratcliffe secured a room at a hotel in Aitkin, and there remained. On October 11 the sheriff of Aitkin county had made a return on the order in the insanity proceedings, reciting that he had served the same on Anna Breckenridge Ratcliffe and had taken her into custody, but had permitted her to remain with some of her relatives who promised to produce her in court when required. On the morning of of October 11, it was found that the probate court was in session with two examiners in lunacy appointed by it, and was prepared to proceed with the hearing in the insanity matter. The probate court room is at the foot of the stairs up which Anna B. Ratcliffe and her attorneys were compelled to pass in order to attend and testify in the district court. The sheriff had been directed by the probate judge to serve the warrant upon Anna B. Ratcliffe, who could not attempt to attend the district court without being subject to arrest under the order made by the probate court. Under the advice and direction of her attorneys, she locked herself in her room at the Willard Hotel at Aitkin, where she remained

until the writ of prohibition was served. The sheriff himself and his deputy made several attempts to get into Mrs. Ratcliffe's room to serve the papers in the insanity proceedings.

The district court of Aitkin county, at the request of the parties, continued the divorce suit and the appeal in the guardianship matter to its March, 1917, general term.

It appears that, subject to certain stipulations reserving to themselves the right to object to the jurisdiction of the probate court, one of Mrs. Ratcliffe's attorneys appeared in the probate court and cross-examined one of the witnesses in the insanity matter. It also appears that it is the intention of the probate judge and of the sheriff of Aitkin county to proceed with the service of the warrant and the hearing in the insanity matter.

1. The provisions of the statute in relation to the commitment of insane persons, so far as here material, are contained in G. S. 1913, §§ 7465-7472. It is provided that when a verified petition is filed, setting forth that a person in the county is insane and in need of care and treatment or that it is dangerous for him to be at large, the court may direct the alleged insane person to be brought before it. Section 7465, supra.

Section 7472 permits not only the probate judge, but, in his absence, the court commissioner, upon receipt of information in writing, duly verified, that there is an insane person in his county needing care and treatment, to issue an order, directing the alleged insane person to be brought before such judge or court commissioner. The statute specifies that the person alleged to be insane must be in the county in which the probate court is situated. It is not necessary that he be a resident of the county, for G. S. 1913, § 7481, provides that where an insane person is found to have his legal residence in some other county, he may, nevertheless, be examined and committed if found insane, and that the necessary costs and expenses of such examination and commitment shall be a claim against the county of his legal residence and shall be paid by the same.

The purpose of this legislation is to provide for the prompt care and treatment of the insane person. To this end the probate court has jurisdiction to examine and commit to the proper hospital any insane person found within the county, no matter where his legal residence may be. But that court has no jurisdiction to inquire into the mental condition of

a person not actually within the boundaries of the county, whether such person be a legal resident of the county or not.

Mrs. Ratcliffe had been domiciled in Hennepin county and had actually and continuously resided there for more than two weeks before the petition alleging her insanity was filed in the probate court of Aitkin county. At the date of the making and filing of the petition she was, and for some time prior thereto had been, a patient in St. Barnabas Hospital in Minneapolis.

2. "Three things are essential to justify the writ (of prohibition) : First, that the court, officer, or person is about to exercise judicial or quasi judicial power; second, that the exercise of such power by such court, officer, or person is unauthorized by law; third, that it will result in injury for which there is no other adequate remedy." Gilfillan, C. J., in State v. Young, 29 Minn. 474, 523, 9 N. W. 737, 738.

In State v. Wilcox, 24 Minn. 143, and State v. Municipal Court of City of St. Paul, 26 Minn. 162, 2 N. W. 166, it was held that prohibition would not lie in a case where, in the course of an ordinary action, the court attempts to decide on matters not within its jurisdiction; for all errors of that description are best corrected by the usual remedy of an appeal, writ of error or *certiorari*; and that due protection to the party in such cases does not require that this court shall interfere and suspend the action of the court below until the question of jurisdiction thus raised and decided shall be passed on here.

The writ of prohibition is in the sound discretion of the court issuing it, and is issued only when it clearly appears that the inferior court or tribunal to which it is directed is proceeding in some matter over which it possesses no rightful jurisdiction, or is exceeding its legitimate power in a matter over which it has jurisdiction. "It is a preventive, not a corrective, remedy." State v. Crosby, 92 Minn. 176, 178, 99 N. W. 636.

"If it (the court) have no jurisdiction of the subject matter, prohibition is the proper remedy; but if it have jurisdiction of the particular matter, and there is no claim that it is exceeding its authority in the premises, the writ will not issue." State v. Craig, 100 Minn. 352, 355, 111 N. W. 3, 5; see also State v. Crosby, supra.

In the instant case the probate court of Aitkin county is about to exercise judicial power in the inquiry into the mental condition of Mrs.

Ratcliffe. The exercise of such power in unauthorized by law. Mrs. Ratcliffe was not, at the inception of the proceedings, and for some time prior thereto had not been, within the limits of Aitkin county, so that the court had no jurisdiction in the matter.

There is no appeal from an order adjudging a person to be insane and committing him to a hospital; nor can such person be admitted to bail, for insanity is not a crime. The remedy by *certiorari* or writ of error is available only when the proceedings have terminated in a final judgment. Even then these remedies would not be adequate in the instant case, because the facts showing that the probate court has no jurisdiction appear *dehors* the record. Neither *certiorari* nor a writ of error permits the consideration of matters *dehors* the record. Bilsborrow v. Pierce, 101 Minn. 271, 112 N. W. 274.

*Certiorari* and a writ of error are not preventive remedies. Their office is not to restrain or prohibit. Bilsborrow v. Pierce, supra.

Mrs. Ratcliffe should not be compelled to submit to a proceeding void *ab initio,* which may terminate in causing her to be illegally committed to and confined in a hospital for the insane, if there be a lawful means of preventing it.

Let the writ issued herein be made absolute, and let all proceedings in the probate court of Aitkin county in the matter of the inquiry into the mental condition of Anna Breckenridge Ratcliffe be annulled.