## MEANS v. STATE.
### No. 2752.

Court of Civil Appeals of Texas. Beaumont.

Oct. 19, 1934.

B. L. Collins, of Lufkin, for appellant.

Marvin Trevathan and Curtis Fenley, both of Lufkin, for the State.

COMBS, Justice.

The state of Texas, as plaintiff, by Marvin Trevathan, county attorney, filed this suit in the district court of Angelina county, Tex., against Doc Means, as defendant, seeking to enjoin Means from operating as a loan broker or as a money lender in Angelina county until he pays the occupation tax provided by law for such business and until he files with the county judge of Angelina county the bond required of loan brokers, and also to restrain the said Doc Means from charging and collecting usurious interest. When the petition was presented to the district judge, he issued a temporary restraining order and set the petition for temporary injunction for hearing. The hearing was held September 1, 1934, and resulted in an order granting the temporary injunction, commanding the said Doc Means to desist and refrain from loaning and collecting and attempting to collect money, and from collecting usurious interest, pending final determination of the case, it being provided in the order that, if the said Doc Means "shall pay the occupational tax as required by law of a loan broker and money lender and shall comply with the laws of the State governing loan brokers," then the injunction restraining the loaning and collecting of money shall be of no further force and effect, but otherwise the order shall remain in effect until the cause is fully disposed of. Appellant, Means, has appealed from the order granting a temporary injunction and has filed a brief. There is no brief for the state.

It appears that the state seeks the injunction on the principal grounds that appellant, Means, is engaged in the business of loan broker and money lender in Angelina county, and that he has not paid the occupation tax and filed the bond required by statute for conducting such business. See article 6162, R. S. 1925, as amended by Acts 40th Legislature, First Called Sess., p. 30, c. 17, Vernon's Ann. Civ. Statutes, art. 6165a; article 7047, subds. 14 and 15. It is also charged that Means collects usurious interest on money loaned.

The state's evidence adduced on the hearing, briefly stated, was: Means has an office in Lufkin, Angelina county, where he makes loans of money. The county judge testified that he has filed no bond, and the tax col-

lector testified that he has not paid an occupation tax. Four persons who have borrowed money from Means were introduced as witnesses by the state. Elisha Reese testified that about three months before the hearing he borrowed $20 from Means and agreed to pay $6 interest thereon every two weeks. He subsequently borrowed an additional $1.50, making the total amount received from Means $21.50; that he had been paying the $6 every two weeks for about three months. Means now claims an indebtedness against him of $27.50, as shown by a statement introduced in evidence. Herman Thatcher testified that he borrowed $6 from Means and agreed to pay 40 cents on the dollar, or a total of $2.40 on the $6 loan as interest every two weeks; that he has made two payments, and Means now claims that he owes him $8.40. Gerthie Thorn testified that three months. ago he borrowed $10 from Means and agreed to pay $3 interest thereon every two weeks; that his agreement was that the $3 was for interest; that the only way the debt can be retired is to pay the full $10 plus any accrued interest, and that Means now claims an indebtedness against him of $13. C. D. Collins testified that he borrowed $15 from Means and agreed to pay $4.60 interest each two weeks; that he has been paying the $4.60 regularly each two weeks for two months and now owes Means $19.60. Counsel for Means made no effort to break down the testimony of these witnesses by contradicting their testimony in any way. It is shown that all four of them are employed by the Lufkin Foundry & Machine Company and are paid their wages twice monthly on the 5th and 20th of each month, and that the contract with Means was that they were to make the payments each pay day. They would simply collect their money and go to Means' office and pay him. There is no evidence that in making the loans Means was acting as agent for any other person.

■■ The evidence failed to establish that Means acted as a "loan broker" or "money lender," within the purview of the statute. Article 6165a, Vernon's Ann. Civ. St., above referred to, defines a loan broker as "a person, firm, or corporation who pursues the business of lending money, purchasing salaries and taking for security for the payment of such loan and interest thereon an assignment of wages or assignment of wages with Power of Attorney to collect the same or other order for unpaid chattel mortgage or bill of sale upon household or kitchen furniture." Section 2. In the case before us there is no evidence that the loans were secured in any way, nor does it appear that there was any assignment of wages by any agreement, oral or otherwise, which removed them from the control of the borrower and made them subject to the payment of the loan made by Means. The mere fact that Means and the borrower agreed that the payments would be made out of the wages collected on pay day would not amount to an assignment so as to constitute Means a loan broker within the meaning of the statute. Brand v. State, 109 Tex. Cr. R. 96, 3 S.W.(2d) 439.

■ Nor does the evidence show that Means was a "money lender" within the meaning of article 7047, subd. 15, R. S. 1925. The article referred to defines a money lender thus: "Every person, firm or association of persons loaning money as agent or agents for any corporation, firm or association, either in this State or out of it," is a money lender. It is clear that, if Means was loaning his own money, and there is no evidence to the contrary, he was not a "money lender." Since it is not shown that appellant was either a "money lender" or "loan broker," and as such subject to the statutory requirement of filing the bond and paying the occupation tax, the state failed to show that he was operating in violation of the law in failing to file the bond and pay the tax.

■ What the evidence does show is that appellant was making small loans of money to laborers at an unconscionable and outrageous interest. It is easy to understand how a chancellor, with a commendable desire to protect the unfortunate victims from such a pernicious practice, would seek to interpose the equitable powers of the court for its suppression. However, under the present state of the law, we do not think that an injunction will lie at the suit of the state to restrain one from merely making loans of his own money at usurious rates of interest. Contracts for the payment of usurious interest are void. The offended individual has his remedy by suit against the lender for recovery of double the amount of the usurious interest paid. See article 5073, R. S. 1925. Whether in the future the state shall be empowered to enjoin the business of money lending at usurious rates of interest under the conditions here shown addresses itself to the sound consideration of the Legislature.

It follows that the injunction was improvidently granted in this case, and the judgment of the trial court is reversed and the temporary injunction dissolved.