STATE EX REL. C. J. CLAUDE AND OTHERS v. DISTRICT COURT FOURTH JUDICIAL DISTRICT AND OTHERS.[1]

February 3, 1939.

No. 32,057.

[1]Reported in 283 N. W. 738.

*Mortimer H. Boutelle, Walter H. Newton, Adrian H. David,* and *M. H. Strothman, Jr.,* for relators.

*Edward J. Goff,* County Attorney, for respondents.

GALLAGHER, CHIEF JUSTICE.

An original proceeding on an order to show cause why a writ of prohibition issued out of this court on the 25th day of January, 1939, should not be made absolute. The writ referred to commands respondents, the district court for the fourth judicial district of Minnesota; the Honorable Vince A. Day, one of the judges thereof; Edward J. Goff, county attorney in and for Hennepin county, Minnesota; and Michael J. Dillon, receiver, and each of them, to desist and refrain from further proceeding in a certain action now pending in the district court of the fourth judicial district of Minnesota entitled: "STATE OF MINNESOTA, ex rel. Edward J. Goff, County Attorney of Hennepin County, Minnesota, Plaintiff, vs. J. HAMMER-BACHER and C. J. CLAUDE, doing business as Family Finance Company, and Don A. Leo, T. Ernest Knudson and John P. Newcomb, Defendants," "until the further order of this court."

The complaint in the district court action alleges in substance that plaintiff is the county attorney of Hennepin county and brings the action in behalf of the state of Minnesota; that defendants, J. Hammerbacher and C. J. Claude, doing business as Family Finance Company, keep and maintain a common or public nuisance in Hennepin county to the injury of the public and contrary to the public policy of the state of Minnesota; that said nuisance consists of the operation of a business commonly known as the "loan shark business"; that its principal object was and is to collect

illegal and usurious rates of interest ranging between 99 per cent and 406 per cent per annum from wage earners in necessitous circumstances; that such business is offensive and detrimental to the general public in that it tends to break down and does break down the morale of the necessitous borrower and in many cases causes him to lose his job and thereby adds to the charity load and relief rolls of the community; that the legal remedies and defenses of the borrowers against defendants and their practices are inadequate and ineffective; and, finally, that an emergency exists and that unless a receiver be appointed there is imminent danger of defendants disposing of their property to individuals not subject to the jurisdiction of the court, thereby causing irreparable loss or damage.

The complaint contains many other allegations pertaining to the method of operation of said business not necessary to recite herein, and prays for the appointment of a receiver to take charge of the assets and property used in connection with its operation and for an injunction restraining defendants, and each of them, from directly or indirectly interfering with or disturbing the receiver in the possession, use, and enjoyment of any of said properties.

On the verified complaint and on motion of plaintiff and without notice to defendants, or any of them, the district court made an *"ex parte"* order appointing Michael J. Dillon receiver of all of the property and assets of defendants "wherever situated, held, owned, or controlled by defendants in the prosecution of their business," and enjoined the defendants, and all of them, "from directly or indirectly interfering with or disturbing the receiver in the possession, use and enjoyment" of said property. The order recited that the court found "that an emergency exists and that immediate and irreparable loss or damage would result to the plaintiff unless this order be made and the receiver appointed." It required the receiver to file an oath and a bond in the sum of $500 and the defendants to show cause before the court on the sixth day of February, 1939, why the receivership and injunction should not be continued until a final determination of the cause.

The order, summons, complaint, and a notice of motion were thereafter served on the defendants. In the meantime the receiver

had summarily ousted relators from their place of business and taken possession of all the books, papers, furniture, and other property therein. The value of the property in question is said to be more than $142,000.

On the 25th day of January, 1939, on the affidavit of C. J. Claude, one of the defendants, the order to show cause referred to in the beginning of the opinion was issued out of this court.

The question is whether defendants are entitled to have the writ made absolute. Relators urge:

First, that the county attorney is without legal authority to institute the proceedings; second, that the district court is without jurisdiction either to enjoin them from the conduct of their business and the use and possession of their assets or to appoint a receiver for such business and assets; and, third, that the district court was wholly without jurisdiction to appoint a receiver "ex parte" or to grant a temporary restraining order.

We do not deem it necessary to discuss at any length the merits of the first two questions raised by relators. We assume, without deciding, that the county attorney is a proper party to maintain the action. If he is not, and there is a defect of parties in that respect, the objection must be taken by demurrer. 5 Dunnell, Minn. Dig. (2 ed. & Supps.) § 7323.

We may also assume for the purpose of this opinion, without so deciding, that the trial court had jurisdiction of the subject matter. The action was one to abate a nuisance in which injunctive relief and the appointment of a receiver were asked. Such actions are ordinarily within the jurisdiction of the district court. In any event, the court possessed the power to inquire into the extent of its jurisdiction and to determine as to what, if any, relief plaintiff was entitled to. If it erred in such determination, the decision could be reviewed by appeal or, if not by appeal, by *certiorari*. State v. Laughlin, 204 Minn. 291, 293, 283 N. W. 395.

There is cause, however, for making the writ absolute. It arises out of the "ex parte" appointment of a receiver on plaintiff's application and without notice to defendants.

To warrant this court in granting the extraordinary remedy of prohibition, it must clearly appear that the inferior court or tribunal to which it is directed is proceeding in some matter over which it possesses no rightful jurisdiction, or is exceeding its legitimate powers in a matter of which it has jurisdiction. State ex rel. Jonason v. Crosby, 92 Minn. 176, 178, 99 N. W. 636; State ex rel. Jarvis v. Craig, 100 Minn. 352, 353, 111 N. W. 3; State ex rel. Roberts v. Hense, 135 Minn. 99, 103, 160 N. W. 198.

Assuming the right of the county attorney to maintain the action and the jurisdiction of the trial court to entertain it, after notice and opportunity to be heard have been provided, we nevertheless are of the opinion that the district court exceeded its jurisdiction and power when, without notice to relators and without giving them an opportunity to be heard, it appointed a receiver to seize their property and deprive them of its use. Respondents endeavor to justify the application of that drastic remedy by asserting that an emergency exists. The trial court so found.

It is true that the district court has power to appoint receivers *ex parte* in cases of extreme emergency. Haugan v. Netland, 51 Minn. 552, 53 N. W. 873; Greenfield v. Hill City Land, L. & L. Co. 141 Minn. 393, 170 N. W. 343. See District Court Rule 45, 2 Mason Minn. St. 1927, p. 2125. See, generally, 72 A. S. R. 35. But, in our opinion, the facts pleaded, upon which the finding of emergency was based, do not constitute an emergency. While cases are cited by respondents to the effect that a receiver may be appointed *ex parte* in case of emergency, our attention has not been called to any case treating as an emergency a situation such as that pleaded.

Remedies other than the granting of this writ are available. State ex rel. Burdic v. Egan, 62 Minn. 280, 64 N. W. 813; Farmers Nat. Bank v. Backus, 63 Minn. 115, 65 N. W. 255. That fact, however, does not foreclose this court from issuing the writ. Wilson v. St. P. M. & M. Ry. Co. 44 Minn. 445, 46 N. W. 909; State ex rel. Roberts v. Hense, 135 Minn. 99, 160 N. W. 198.

And where, as here, the action of the lower court is not only in excess of its jurisdiction but also of such a character as to amount to an invasion of relators' rights, the writ will issue notwithstand-

ing the availability of some other less prompt remedy. While in the ordinary case the writ will not issue until application has been made to the district court, this requirement is a matter of practice and is not to be insisted upon where it appears to be useless. State ex rel. Minnesota Nat. Bank v. District Court, 195 Minn. 169, 262 N. W. 155.

The determination we have arrived at is supported by competent authority. In State ex rel. Kopke v. Mulloy, 329 Mo. 1, 43 S. W. (2d) 806, the court made absolute a preliminary writ of prohibition restraining a judge of a lower court from further action in a case where the judge had, on the verified petition of a shareholder of the relator, appointed a receiver *ex parte* and empowered him to take possession of relator's property. In Nottebaum v. Leckie (3 Cir.) 31 F. (2d) 556, 562, the court said:

"The appointment of the receivers without notice or an opportunity to be heard, and the resulting divestiture of defendant's property and business, was a taking of their property without due process of law, and therefore illegal and void from the beginning."

In Arnold v. Bright, 41 Mich. 207, 2 N. W. 16, a decree setting aside a written lease on *ex parte* application by the lessor was reversed. Mr. Justice Cooley, concurring specially, said at p. 210:

"The court of chancery has no more power than any other to condemn a man unheard, and to dispossess him of property *prima facie* his, and hand over its enjoyment to another on an *ex parte* claim to it."

In Larsen v. Winder, 14 Wash. 109, 44 P. 123, 53 A. S. R. 864, an order appointing a receiver on *ex parte* application was reversed. The language used by the court is consistent with the theory that the order was void. Contrary views are expressed in Maynard v. Railey, 2 Nev. 313.

We are not deciding the issue on constitutional grounds. Our decision is that, aside from the constitution, the district court was without jurisdiction, in the absence of notice and an opportunity for hearing, to oust defendants from their place of business and

take from them, even temporarily, the large amount of property found therein. The vice of such procedure explains why our federal bill of rights (in that respect our state bill is identical in effect) incorporates guaranties against unreasonable search and seizure, and that no man may be compelled to furnish evidence against himself.

True, those guaranties apply only to criminal prosecutions. But the instant procedure so suggests possible, if not probable, criminal prosecutions to follow that we do not consider it amiss to point out that the prosecuting officials are treading very close, if they have not invaded, a field of individual rights, which is closed to them and to the government itself by the barricade of constitutional prohibition.

All decent-minded citizens approve the efforts of any public official, particularly a prosecutor, who is alive to his duty to suppress the illegal and iniquitous activities of "loan sharks." But it is to the merit of our constitutional safeguards that they operate as much for one accused of wrongdoing as for him who is free from suspicion. For that very reason, care must be taken to see that those most friendly to popular government do not, through excess of zeal, seriously weaken the structure of the bill of rights by nullifying any of its safeguards in a laudable effort to punish those who richly deserve punishment. If a breach in the wall once be made in such a case it is too certain to remain open for use where the objective would be the opposite of meritorious. And when the wall is once breached the continued use of the opening is certain to increase it so as to weaken the whole wall and eventually lead to its ruin. That is one of the plainest lessons of the history of constitutions and governments. State ex rel. University of Minnesota v. Chase, 175 Minn. 259, 275, 220 N. W. 951. To forget or ignore it is to undermine constitutional government.

Let the writ issued be made absolute but without prejudice to plaintiff's right to proceed with his application on a proper notice or on an order to show cause.

Holt, Justice (dissenting),

I think the writ should not issue. Insofar as appointing a receiver the court erred for failure of notice. But the order is made and is appealable. That remedy is certainly as expeditious and effective as to obtain a writ of prohibition from this court. Farmers Nat. Bank v. Backus, 63 Minn. 115, 65 N. W. 255.

Stone, Justice (concurring).

I concur, but am disposed to question whether in such a case as this there is jurisdiction to appoint a receiver even on notice and after hearing. That is because plaintiff has no interest, present or future, in defendants' property to be protected or conserved by a receivership. See note 109 A. L. R. 295.

Loring and Julius J. Olson, Justices (concurring).

We concur in the views expressed by Mr. Justice Stone.

