STATE EX REL. EDWARD J. GOFF v. R. J. O'NEIL, DOING
BUSINESS AS METRO LOAN COMPANY.[1]

May 26, 1939.

Nos. 31,981, 31,994.

[1]Reported in 286 N. W. 316.

*Gainsley, Goldstein & Levitt,* for appellant.

*J. A. A. Burnquist,* Attorney General, *M. Tedd Evans,* Assistant Attorney General, *Edward J. Goff,* County Attorney, and *Per M. Larson,* Assistant County Attorney, for respondent.

*Nichols, Mullin & Farnand, amici curiae,* filed a brief on behalf of Minnesota State Federation of Labor.

*Joseph A. Padway, amicus curiae,* filed a brief on behalf of American Federation of Labor.

HOLT, JUSTICE.

Action by the state on relation of the county attorney of Hennepin county to enjoin defendant from conducting a small loan business in the city of Minneapolis in which usury is invariably exacted. Upon the verified complaint and accompanying affidavits the court, September 23, 1938, made an *ex parte* order appointing a receiver to take over defendant's said business and issued a temporary restraining order. On the same date the summons, with com-

plaint and affidavits attached, was served upon defendant personally together with notice of motion for a temporary injunction, and the court also issued an order for defendant to show cause October 10, 1938, the time named in plaintiff's motion, why such temporary injunction should not issue *pendente lite* and why such receiver should not continue to act. Defendant answered and filed counter affidavits, and a hearing was had. October 28, 1938, the court filed an order granting a temporary injunction and continuing the receivership. September 29, 1938, defendant procured from the court an order on plaintiff to show cause why the order appointing the receiver should not be revoked and the receiver directed to restore the property seized to defendant. A hearing was had and by order filed October 17, 1938, the order to show cause was discharged. Defendant appeals from both the order filed October 28 and the one filed October 17.

That the complaint and supporting affidavits herein did not present an emergency authorizing the court on an *ex parte* application to appoint a receiver of defendant's business must be considered settled by State ex rel. Claude v. District Court, 204 Minn. 415, 283 N. W. 738. The complaint upon which a receiver *ex parte* was there appointed was substantially of the same import as the one herein. However, while the court here erred in appointing a receiver *ex parte,* the record shows the following whereby defendant both had notice and gave notice and had two hearings on the merits as to whether or not in this action there should be a temporary restraining order or injunction issued, and as to whether or not there should be a receiver of defendant's business *pendente lite.* The court, on September 23, 1938, without notice to defendant, appointed a receiver of his said business; but on the same day the summons, with complaint and affidavits attached, was served upon defendant, together with notice of motion to be heard October 10, 1938, for a restraining order or temporary injunction and for the retention of the receivership pending suit, and, in addition, the court issued an order for defendant to show cause at the hearing of the motion why it should not be granted. So, for the hearing, there was adequate notice, and defendant appeared generally and

submitted numerous counter affidavits. Having heard the parties, the court filed its order October 28, 1938, granting plaintiff's motion. Not only that, but on September 29, 1938, defendant procured an order from the court directing plaintiff to show cause why the order of September 23, 1938, appointing a receiver herein of defendant's business, should not be revoked and the business seized by the receiver restored to defendant. Both parties were heard, and the order to show cause was discharged by order filed October 17, 1938. So there have been two hearings on notice as to whether on the merits a receiver was properly appointed *pendente lite*. Therefore, on this appeal, the want of notice to defendant of the application for a receiver in the action is out of the case. High, Receivers (4 ed.) § 112, p. 131, states:

"But where the propriety of the action of the court in appointing a receiver without notice has been considered by the court upon a motion to discharge the receiver and the court has sustained the original order by refusing to discharge him, the want of notice of the appointment is thereby cured." Schmid v. Ballard, 175 Minn. 138, 220 N. W. 423; Boyd v. Brown, 79 Col. 568, 247 P. 181; Bristow v. Home Bldg. Co. 91 Va. 18, 20 S. E. 946, 947.

It is to be noted that the appeal is from two interlocutory orders. The action is for an injunction enjoining defendant from conducting a business wherein the usury law is invariably violated. If the action is maintainable, there is judicial discretion in granting or refusing the ancillary remedies of a receiver, and a temporary injunction or restraining order.

Defendant by his answer avers that the county attorney is not a proper party plaintiff. Whether the county attorney in his official capacity is empowered to institute a suit of this nature need not now be decided, for it is conceded that the attorney general has authority to institute such a suit on behalf of the state. 1 Mason Minn. St. 1927, § 109, reads:

"The attorney general shall appear for the state in all causes in the supreme and federal courts wherein the state is directly in-

terested; also in all civil causes of like nature in the district courts: whenever, in his opinion, the interests of the state require it."

1 Mason Minn. St. 1927, § 926, relating to the duties of a county attorney, provides that he, "whenever requested by the attorney general, shall appear for the state in any case instituted by such attorney general in his county."

In this court on this appeal the attorney general has come in and filed a supplemental brief with the county attorney. There can be no doubt of the attorney general's power to step into a cause where the state is a party and take over or carry on the same regardless of the fact that it had been instituted by the county attorney on behalf of the state. A supplemental record also shows that in the court below the attorney general entered an appearance on behalf of the state in this case and joins as a relator herein and adopts this action as his own. Defendant's objection to the attorney general's appearance in the appeals must be overruled. And we are of the opinion that by the attorney general so coming in for the state, the action must here be considered in the same manner as if originally instituted by him instead of by the county attorney.

The next proposition is: Does the complaint state a cause of action for injunctive relief? It is conceded that our statutes forbidding the taking of usury do not subject the transgressor to a penalty by way of imprisonment or fine. So there is no remedy for usury under the criminal law. The plaintiff contends that the business of usury as carried on by defendant is in the nature of a public nuisance and as such may properly be enjoined. In Town of Linden v. Fischer, 154 Minn. 354, 357, 191 N. W. 901, 902, in an action to enjoin an unlicensed dance hall, the court said:

"And although equity will not ordinarily, by injunction or otherwise, restrain the commission of a crime, it will thus interpose its authority in those cases where the threatened act or conduct of the party will amount to a continuing public nuisance as well as a crime. Such would be the result of repeated violations of the by-law in question. It prohibits public dances without a license, and a violation thereof would constitute a crime; at the same time

amounting to a continuous public nuisance. In that situation the punishment imposed, generally that applied to misdemeanors, would usually be wholly ineffective and of no deterrent effect; while the strong arm of equity would result in the complete suppression of the evil sought to be avoided."

As stated, usury, by our statute, is not made a crime, so the state may not put a stop to the practice by criminal prosecution. However, our usury legislation clearly establishes the policy of the state outlawing the taking of usury. It is forbidden. Why? In the interest of public welfare, to protect the helpless and the poor, always present in every community, from the rapacity of the money lenders who exact usury. On principle, where there is no adequate remedy either by criminal law or by the ordinary civil suit, equity may properly come to the rescue by appropriate injunctive relief. The complaint herein charges that defendant "maintains a common or public nuisance in Hennepin County, Minnesota, and is engaged in habitually, continuously and repeatedly, openly, publicly, persistently and intentionally doing the acts hereinafter in detail set forth, all to the injury of the public and contrary to the public policy of the state of Minnesota." The complaint sets forth that in October, 1935, defendant opened an office in the city of Minneapolis and that from its opening up to the present time he has therein been engaged in the "loan shark business," the principal object of which is "to collect and extort illegal and usurious rates of interest, sometimes as high as five hundred thirty per cent (530%) per annum, from wage earners who are forced by necessitous circumstances, such as sickness, birth of children, accidents, etc., to borrow small sums of money." It is averred that the amounts of the loans made by defendant are small, varying from five to fifty dollars, that they are originally made for short terms, usually from one to six months, to be repaid in small monthly or semimonthly payments; that defendant advertises the business extensively, offering commissions to those bringing him customers; that he purposely selects the poor and necessitous wage earners and exacts notes for the loans in amounts grossly in excess of the sums

loaned; that defendant has made many hundreds of these usurious loans, many of which are outstanding at this time; that the legal remedies and defenses of these borrowers are inadequate and ineffective in that the borrowers are unwilling and financially unable to prosecute or defend their rights in court. These allegations are extensively amplified by showing the methods used to extort payment of the usurious loans, and the inability of the borrowers to get out of defendant's clutches once they are in.

A public nuisance is defined by 2 Mason Minn. St. 1927, § 10241, thus:

"A public nuisance is a crime against the order and economy of the state, and consists in unlawfully doing an act or omitting to perform a duty, which act or omission—

"1. Shall annoy, injure, or endanger the safety, health, comfort, or repose of any considerable number of persons."

Does a business in which every transaction is usurious thereby illegally extorting money from customers, being a considerable number of persons, and likely to affect their health, peace of mind, and welfare constitute a public nuisance? It would seem reasonable to conclude that the carrying on, advertising, and openly conducting a business so that every transaction thereof is an intentional violation of the usury law enacted for the protection of the large class of necessitous persons in every community is a public nuisance. Courts of high standing have so declared. State ex rel. Smith v. McMahon, 128 Kan. 772, 280 P. 906, 66 A. L. R. 1072; State ex rel. Beck v. Basham, 146 Kan. 181, 70 P. (2d) 24; Commonwealth ex rel. Grauman v. Continental Co. Inc. 275 Ky. 238, 121 S. W. (2d) 49. In the Basham case the court said [146 Kan. 186, 70 P. (2d) 27]:

"There is no reason defendant should be permitted openly, notoriously and flagrantly to violate our valid laws enacted for the benefit of our people. The state would be weak indeed if it were powerless to prevent it. Criminal prosecution is not available. Injunction is the only remedy. That remedy can be and should be enforced."

And in the Continental Company case, after giving the general rule that relief by injunction is not the proper remedy where the complaining or injured party has an adequate remedy by law, states that it has many exceptions, quoting from In re Debs, 158 U. S. 564, 15 S. Ct. 900, 39 L. ed. 1092, and State ex rel. Jackson v. Lindsay, 85 Kan. 79, 116 P. 207, 35 L.R.A.(N.S.) 810, and proceeds, 275 Ky. 238, 121 S. W. (2d) 54:

"The prevention of crime is not the primary purpose of the Small Loan Law, but it has for its underlying purpose the protection of the public and the public welfare. * * * Furthermore, it is fundamental that injunction will lie, under a great many circumstances, to prevent the repeated and continuous violation of a penal statute, and to avoid a multiplicity of criminal prosecutions."

In opposition defendant cites People v. Seccombe, 103 Cal. App. 306, 284 P. 725. There a demurrer to the complaint in a suit for injunction against a usurer was sustained because no sufficient facts were alleged, but mere conclusions of law. In the case of Means v. State (Tex. C. C. A.) 75 S. W. (2d) 953, a temporary injunction was vacated on appeal. The state filed no brief. The action was to enjoin Means from operating as a loan broker or money lender in the county because he had not been licensed as such, as the Texas law required. It was also alleged that Means collected usurious interest on the money loaned. On the appeal it was held that there was no evidence that Means was a loan broker or money lender of the sort that was required to be licensed, and the court said [75 S. W. (2d) 954]:

"Contracts for the payment of usurious interest are void. The offended individual has his remedy by suit against the lender for recovery of double the amount of the usurious interest paid. See article 5073, R. S. 1925. Whether in the future the state shall be empowered to enjoin the business of money lending at usurious rates of interest under the conditions here shown addresses itself to the sound consideration of the Legislature."

Neither case presents the same situation as that stated in the complaint in the instant case. It appears from this complaint that

the remedy available to defendant's victims is ineffective to stop the practice. They have not the means to employ a lawyer. The amounts involved are so small that to seek to recover what has been illegally extorted or defend against the obligation given for the loan would cost more than the amounts involved, besides the loss of time and the annoyance of litigation. Unless the state may enjoin a business in which every transaction is a flagrant violation of the usury law enacted for the protection of the many necessitous borrowers of trifling amounts, there is no effective remedy for the enforcement of the law. Injunction has been resorted to in respect to repeated and persistent infractions of other laws than those forbidding usury. Township of Hutchinson v. Filk, 44 Minn. 536, 47 N. W. 255; Town of Linden v. Fischer, *supra;* State v. Nelson, 189 Minn. 87, 89, 248 N. W. 751; Stead v. Fortner, 255 Ill. 468, 474, 99 N. E. 680; Columbian Athletic Club v. State, ex rel. McMahan, 143 Ind. 98, 40 N. E. 914, 28 L. R. A. 727, 52 A. S. R. 407. In People ex rel. Bennett v. Laman, 277 N. Y. 368, 14 N. E. (2d) 439, injunctive relief was held proper against unlawful practice of medicine even though punishable as a crime. Such unlawful practice was deemed a public nuisance.

The next proposition is whether or not the court erred in granting a temporary injunction and in refusing to vacate the *ex parte* order appointing a receiver. Having concluded that the complaint states a cause of action for injunctive relief, we consider there was ample showing to justify the issuance of a temporary injunction or a restraining order *pendente lite.* In so doing the court was in the exercise of judicial discretion, and there is nothing to indicate abuse of such discretion. Durgin v. Mercantile Acceptance Co. 167 Minn. 330, 209 N. W. 5.

The retention of the receiver appointed presents a more novel legal proposition. Defendant by his answer admits that some of his loans were usurious. Neither by affidavit nor by answer does he assert that any of his many loans were untainted with usury. Many of the counter affidavits of patrons, offered by him at the hearings, admit paying premiums above the legal interest for loans made by him to them. From examination of the books and evidences of

indebtedness of defendant's business, taken over when appointed, the receiver makes an affidavit showing the existence of 595 loans, upon which there still appears unpaid in excess of $14,000, although of the total sums loaned of $14,400, over $20,000 has been repaid. It is further shown that of these loans only four were of $100 each; all the rest were in sums of $50 and less. The interest rate of each loan is shown. Only in five cases was it less than 100 per cent per annum. Those five were 76, 82, 87, 94, and 96 per cent per annum. In the other 590 loans the interest rate per annum would average well over 300 per cent, one exceeding 1,000 per cent.

In this situation should defendant's books and evidences of the usurious debts be restored to him? If the notes are disposed of and reach *bona fide* purchasers for value before maturity, the defense of usury is not available. The court should not give an opportunity for this to happen. 2 Mason Minn. St. 1927, § 7037, permits one who has paid usurious interest to recover the same with costs, but the officer collecting the recovery must pay one-half thereof into the treasury of the county for the use of the common schools. The state and county having thus an interest in the usurious interest exacted by defendant, the attorney general or the county attorney ought to be able to utilize the receiver in collection thereof. 2 Mason Minn. St. 1927, § 7039, compels offenders of the usury statutes to answer on oath the complaint in any action brought in the district court for the discovery of anything taken or received in violation of the usury statute; and § 7040 reads:

"Whenever it satisfactorily appears to a court that any bond, bill, note, assurance, pledge, conveyance, contract, security, or evidence of debt has been taken or received in violation of the provisions of this chapter, it shall declare the same to be void, enjoin any proceeding thereon, and order it to be canceled and given up."

The receiver is now in possession of the accounts, notes, and other written evidence of the usurious transactions of defendant's business. And it appears to us, in view of the statutes referred to, that the same should remain in his hands to abide the trial and judgment herein. It is true that the defense of usury as well as the

recovery of usurious interest paid is personal to the borrower. Drew v. Skeena Lbr. Co. Ltd. 180 Minn. 358, 230 N. W. 819, 70 A. L. R. 353. However, one standing in some relation to the borrower, for example, as a surety, may also rely on the same defense or assert the same right. The state and county in behalf of the common schools have an interest in the usurious transactions of defendant now in the custody of the receiver. If there be other property not a part of the usurious documents, or not evidence of such transactions, nor used therein, the court will no doubt direct the receiver to restore such to defendant upon proper application therefor. We think there was no abuse of judicial discretion in retaining the receiver *pendente lite.*

No danger is to be apprehended that courts will grant injunctive relief against violators of statutes where there is an adequate remedy at law. In the case at bar there is no remedy by fine or by imprisonment; and, even were there such, the nature of defendant's business is such that the remedy given his victims for the usury exacted is ineffective because of their helplessness and inability to make use thereof.

The orders are affirmed.

STONE, JUSTICE (dissenting).

I think that the business of a "loan shark," as the same is described by Mr. Justice Holt, is an aggravated nuisance, and that the complaint makes this case *prima facie* one for relief by injunction. I think that a temporary injunction was properly issued.

But I cannot agree that the state has shown any such interest in defendant's property as to justify a receivership. On that point my opinion remains as expressed in State ex rel. Claude v. District Court, 204 Minn. 415, 283 N. W. 738.

That the state may have some cause of action against defendant to recover penalties does not give it an interest in or a lien upon defendant's property, or any of it. In the absence of such lien or interest, there is no ground upon which to appoint a receiver. I respectfully submit that the receivership here is being used as a summary and drastic substitute for the remedy of discovery. We

are opening a trail fraught with great danger when we hold, as we do here, that a receivership is allowable when its only purpose is to procure evidence in advance of trial.

PETERSON, JUSTICE (dissenting).

I concur in the proposition expressed in the dissent of Mr. Justice Stone that the state has not shown any such interest in defendant's property as to justify a receivership. See note, 23 Minn. L. Rev. 843. Since such a holding would be decisive of the case, I do not deem it necessary to express any opinion with respect to the other questions considered by the majority.

MR. JUSTICE HILTON, being incapacitated by illness, took no part.

