The STATE of North Dakota ex rel. Leslie
R. BURGUM, Attorney General, State of
North Dakota, Plaintiff and Respondent,

v.

Dale L. HOOKER, doing business as Peerless Finance Company, and Florence J.
Witcik, Defendants and Appellants.

No. 7680.

Supreme Court of North Dakota.

Dec. 20, 1957.

———◆———

Francis Murphy, Donald H. Crothers, Fargo, for appellants.

Norman G. Tenneson, Special Asst. Atty. Gen., for respondent.

GRIMSON, Chief Justice.

This is an action by the State of North Dakota, on the relation of Leslie R. Burgum, Attorney General, to enjoin the defendants from conducting a usurious, small loan business in the City of Fargo. Upon a verified complaint and fifteen affidavits alleging that said business was conducted in gross violation of the usury statutes of the State of North Dakota, against the public policy of the State and to the injury of the unfortunate people forced by necessitous circumstances to make such loans, the court, on the 5th day of December, 1956, granted an ex parte order restraining the defendants from carrying on said business in a usurious manner and upon the allegation of the existence of an emergency, appointed a receiver who took possession of the office and business of the Peerless Finance Company. The court further ordered the defendants to show cause on the 21st day of December, 1956, at 10 o'clock A.M. why said injunction and receivership should not be continued until the trial and final determination of the case.

The defendants demurred to the complaint and made a motion to vacate the restraining order and the appointment of a receiver. The court then directed the plaintiffs to show cause on Dec. 21st 1956 why said motions should not be granted.

On the return date of said orders, both parties submitted all of the issues involved upon the affidavits and argument of counsel. On the 24th day of January 1957, the court overruled the demurrer and issued an order denying the motion to vacate the temporary injunction and the appointment of a receiver and further ordered the injunction continued until the final disposition of the action upon its merits, and enjoined the defendants from interfering with the receiver in his administration of the property. From that order this appeal is taken. Subsequently the defendants answered by a general denial.

The complaint upon which these proceedings are based alleges that the attorney general is bringing this action on behalf of the State of North Dakota; that the defendants are doing business as Peerless Finance Company; that the defendants openly, publicly, and intentionally maintain a common nuisance in the City of Fargo by operating a small loan business charging usurious interest; that their patrons are wage earners without money or credit, forced by necessitous circumstances to borrow small sums of money ranging from $5 to $100 for terms usually from one to six months on payments made weekly; that upon default, the notes are repeatedly renewed into new loans under such conditions

that the original amount borrowed draws from 149 to 277 per cent per annum interest; that the defendants threaten the borrowers by letters, telephone and personal conversation when the notes are not paid or renewed and in that way disturb the peace of mind of the numerous needy wage earners who deal with them, endangering their comfort, repose and security; that the great majority of the said borrowers are financially unable to protect their rights; that many of them are without knowledge of their rights and are easy victims of the lenders; that they are afraid of being sued, afraid of losing their positions if their employers are garnisheed; that they live in constant worry on account of the illegal activities of the defendants which reduces their money for necessary living supplies and which sometimes interferes with their ability to work so that they lose their jobs and become a burden on State Welfare at the cost of the public; that the defendants have hundreds of customers and have carried on this kind of business for five years; that they have many usurious loans outstanding; that said business practice is contrary to and in violation of public policy which includes the protection of all members of society from illegal practices upon them; that the business and professional men of the community suffer losses on account of such practice; that all these circumstances call upon the state itself to institute this litigation for the welfare of the people and the prevention of the dire results caused by this open, unlawful and usurious nuisance. The relator claims that an emergency exists; that unless a receiver is appointed there is imminent danger of defendants disposing of their property and causing irreparable loss and damage. Relator asks that a receiver be appointed to administer the property under the direction of the court during the progress of this lawsuit.

The complaint is supported by fifteen affidavits of individuals who have done business with the defendants, setting forth the unfortunate circumstances on account of which they have had to do business with them, the treatment they have received and the illegal interest they have been forced to pay. Further affidavits were filed before the hearing. Each of the original affidavits has been analyzed by a certified accountant and according to the statements made in the affidavits the affiants had been paying interest at the rate of from 149%/10ths per cent to 277%/10ths per cent per annum. The report of the receiver is to the effect that the books and records of the company show 406 borrowers owing a balance of $17,566.43 on December 5, 1956, in small amounts paying such usurious interest.

The defendants on their demurrer argue that the state has no authority to bring an action on the matter alleged in the complaint, claiming that the state has no financial interest therein and that the public is not affected thereby. The demurrer admits all the well-pleaded allegations of the complaint which have been heretofore set forth. Those allegations are sufficient to show an injury to the general public welfare. It has been repeatedly held that the state has the right, independent of any statutory provision, to institute a suit in any of its courts when it is required for the general welfare of its people. "It possesses this right both in its sovereign capacity and by virtue of its corporate rights." 49 Am.Jur., States, Territories, and Dependencies, Section 80, pp. 292, 293. In re Debs, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092, an injunction against a railroad strike was involved. It was claimed the United States proprietorship of the mails was a financial interest which gave it the right to enjoin the strike. At 158 U.S. 584, 15 S. Ct. 906, 39 L.Ed. 1102, the court said:

"We do not care to place our decision upon this ground alone. Every government, entrusted by the very terms of its being with powers and duties to be exercised and discharged for the general welfare, has a right to apply to its own courts for any proper

assistance in the exercise of the one and the discharge of the other, and it is no sufficient answer to its appeal to one of those courts that it has no pecuniary interest in the matter. The obligations which it is under to promote the interest of all and to prevent the wrongdoing of one, resulting in injury to the general welfare, is often of itself sufficient to give it a standing in court."

In Stead v. Fortner, 255 Ill. 468, 478, 99 N.E. 680, 683, it is said:

"The public authorities have a right to institute the suit where the general public welfare demands it and damages to the public are not susceptible of computation. The maintenance of the public health, morals, safety, and welfare is on a plane above mere pecuniary damage, although not susceptible of measurment in money, and to say that a court of equity may not enjoin a public nuisance because property rights are not involved would be to say that the state is unable to enforce the law or protect its citizens from public wrongs." See also State ex rel. Hopkins v. Howat, 109 Kan. 376, 388, 198 P. 686, 692, 25 A.L.R. 1210, 1225; State v. F. W. Fitch, 236 Iowa 208, 17 N.W.2d 380; State v. Chicago & N. W. Railway Co., 147 Neb. 970, 25 N. W.2d 824.

The relator further claims that the situation shown in the complaint and affidavits is such that not only is the state entitled to resort to equity under its general power to prevent injury to the public welfare but also under the statutory provisions to restrain a nuisance which he claims the complaint and affidavits show. He cites the following statutes:

Sec. 32–0503, NDRC 1943, "Preventive relief consists in prohibiting a party from doing that which ought not to be done. It is granted by injunction, temporary or final."

Sec. 32–0502, NDRC 1943, provides: "Preventive relief cannot be granted to enforce a penal law, *except in a case of nuisance,* nor to enforce a penalty or forfeiture in any case." (Emphasis ours.)

Sec. 42–0101 NDRC 1943, defines "nuisance" as follows: "A nuisance consists in unlawfully doing an act or omitting to perform a duty, which act or omission:

"1. Annoys, injures, or endangers the comfort, repose, health, or safety of others;

"2. Offends decency;

"3. * * *

"4. In any way renders other persons insecure in life or in the use of property."

The complaint and affidavits assert that this usurious small loan business, and defendants' procedure therein, offend the decency and endangers the repose and security of the borrowers and their dependents so as to render them inefficient in their work, and insecure in life.

It has been repeatedly held that the usurious small loan business is a nuisance; that the exercise of equity jurisdiction is necessary to protect the public by preventing public wrongs arising from repeated, continuous, unlawful acts which are against public policy and which result in injury to the public and its welfare.

The case of State ex rel. Goff v. O'Neil, 205 Minn. 366, 286 N.W. 316, 319, was brought to enjoin the defendants from conducting a usurious small loan business. The court referred to Sec. 10–10241 Mason Minnesota St. 1927, which is very similar to our statute on public nuisance and said:

"Does a business in which every transaction is usurious thereby illegally extorting money from customers, being a considerable number of per-

sons, and likely to affect their health, peace of mind and welfare, constitute a public nuisance? It would seem reasonable to conclude that the carrying on, advertising, and openly conducting a business so that every transaction thereof is an intentional violation of the usury law enacted for the protection of the large class of necessitous persons in every community is a public nuisance. Courts of high standing have so declared. * * * Commonwealth ex rel. Grauman v. Continental Company, Inc., 275 Ky. 238, 121 S.W. 2d 49."

In the case of State ex rel. Beck v. Associated Discount Corporation, 162 Neb. 683, 77 N.W.2d 215, 229, the court said:

"The disastrous effects of usury are universally recognized and in every jurisdiction the state has, as a matter of public policy, enacted some measure of protection for its people from the harsh result and injury to them arising from unconscionable and unlawful exactions for the use of money imposed upon its residents, many of whom are obscure, economically distressed, and unable to protect themselves. The state itself, represented by the Attorney General, has therefore of necessity, in order to protect its people and prevent public wrongs, emerged as the proper party whose duty it is to represent all the public in defense of the state's own sovereignty and bring such actions as that at bar. In doing so, courts have generally recognized the state's right to the equitable remedies of injunction and receivership as a proper and effective method of controlling unlawful lenders under statutes comparable with our own. See, State ex rel. Smith v. McMahon, 128 Kan. 772, 280 P. 906, 66 A.L.R. 1072; State ex rel. Fatzer v. Miller, 176 Kan. 175, 268 P.2d 964; State ex rel. Fatzer v. Miller, 177 Kan. 324, 279 P.2d 223, 52 A.L.R.2d 691; Commonwealth ex rel. Grauman

v. Continental Co., Inc., 275 Ky. 238, 121 S.W.2d 49; State ex rel. Moore v. Gillian, 141 Fla. 707, 193 So. 751; State ex rel. Goff v. O'Neil, 205 Minn. 366, 286 N.W. 316; Gifford v. State, Tex.Civ.App., 229 S.W.2d 949."

The right of the state to injunctions to protect its established public policy is also sustained in Commonwealth ex rel. Grauman v. Continental Co., 275 Ky. 238, 121 S.W.2d 49; Try-me Bottling Co. v. State, 235 Ala. 207, 178 So. 231; State ex rel. Embry v. Bynum, 243 Ala. 138, 9 So.2d 134; State ex rel. Beck v. Basham, 146 Kan. 181, 70 P.2d 24.

■ The defendants argue that the situation set forth in the complaint and affidavit does not amount to a public nuisance in that it does not affect a sufficient number of people to make it such. He cites the statute, Section 42–0106, NDRC 1943, which provides as follows:

"A public nuisance is one which at the same time affects an entire community or neighborhood or any considerable number of people, although the extent of the annoyance or damage inflicted upon the individual may be unequal."

In Dean v. State, 151 Ga. 371, 106 S.E. 792, 793, 40 A.L.R. 1132, the court says:

"It is obvious that a nuisance may be public though it does not necessarily consist in any act or thing which does in fact cause hurt, inconvenience, or injury to all of the public; generally it is sufficient if it injures those of the public who may [have] come in contact with it."

In Finkelstein v. City of Sapulpa, 106 Okl. 297, 234 P. 187, the court says:

"A 'public nuisance' is not necessarily one affecting the government or the entire community of the state, but it is public if it affects the surrounding community generally or the people of some local neighborhood."

In People v. King's County Iron Foundry, 209 N.Y. 207, 102 N.E. 598, 599, the court says:

"The expression 'any considerable number of persons' is used solely for the purpose of differentiating a public nuisance, which is subject to indictment, from a private nuisance. But a considerable number of persons does not necessarily mean a very great or any particular number of persons."

At the time of the trial the defendant had 406 borrowers in the City of Fargo, most of whom had families to support. The defendants have taken money from them illegally by charging 149 percent or more on their loans. They and their families have been injured by defendant's business. Furthermore, defendants had been in business in Fargo for five years. To remain in business they must have had borrowers. Thus now and in the past a very considerable number of people have come in contact with defendants' business and been injured by it. Clearly a sufficient number was affected so as to constitute defendants' business a public nuisance and subject to be enjoined by the state itself for the welfare and protection of the people.

The defendants also argue that adequate civil and criminal remedies are provided in North Dakota to protect the borrower against the procedure shown in this case; that, therefore, the remedy by injunction is not applicable. They refer to the following sections of the Code:

Sec. 47-1409, NDRC 1943, provides that receiving any greater sum than 7 percent for loan of money shall be unlawful and deemed usury. Sec. 47-1410, NDRC 1943, provides civil liability for usury and Sec. 47-1411, NDRC 1943, makes the collection of usury a misdemeanor.

Defendants cite no case from our courts involving usurious small loan practice either in protection of the borrower or the punishment of the lender. The condition of the borrowers, both financial and mental, according to the affidavits, were such that they were reluctant to resort to either civil or criminal procedure. To stop the defendants might take many criminal actions. The defendant, Hooker, owner of the business is a non-resident and could not be extradited on a misdemeanor. Ritholz v. Commonwealth, 184 Va. 339, 35 S.E.2d 210. Even if found in the state, the punishment of the defendant in each case would be wholly ineffective in stopping the usurious loan business. It could still continue as a public nuisance. Town of Linden v. Fischer, 154 Minn. 354, 191 N.W. 901. In People v. Truckee Lumber Co., 116 Cal. 397, 48 P. 374, 39 L.R.A. 581, it is held that the fact that a public nuisance is made punishable as a misdemeanor is not a bar to a suit to enjoin it, nor does it imply that the legislature intended to make a criminal or civil remedy exclusive of the equitable. See also City of New Orleans v. Liberty Shop, 157 La. 26, 101 So. 798, 40 A.L.R. 1136; Dean v. State, 151 Ga. 371, 106 S.E. 792, 40 A.L.R. 1132; State v. Ehrlick, 65 W.Va. 700, 64 S.E. 935, 23 L.R.A.,N.S., 691; State ex rel. Stewart v. District Court, 77 Mont. 361, 251 P. 137, 49 A.L.R. 627; People v. Seccombe, 103 Cal.App. 306, 284 P. 725, 728.

"The criminality of the act it has been said, neither gives nor ousts jurisdiction in chancery." 43 C.J.S. Injunctions § 151, p. 762.

In McGurren v. City of Fargo, N. D., 66 N.W.2d 207, 211, this court said:

"A legal remedy in order to be adequate in the sense involved in determining the jurisdiction of equity must be as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity. Bourke v. Olcott Water Co., 84 Vt. 121, 78 A. 715, 33 L.R.A.,N.S., 1015."

The appellants cite the case of Richmond v. Miller, 70 N.D. 157, 292

N.W. 633, 635, in which this court held that an injunction would not lie to prevent the defendant from barbering without a license, which was a misdemeanor. This court held that injunction may not issue for the prevention of criminal acts unconnected with the violation of legal rights. Judge Christianson, who wrote the opinion, qualifies that holding by the statement:

> "When a state of facts is presented, which, according to established principles, calls for the interposition of equity to protect legal rights, the equitable jurisdiction is not destroyed because the acts sought to be prevented are criminal in their nature, and punishable under the penal laws. 1 High on Injunctions, 4th Ed. p. 33; 32 C.J. pp. 277, 278. In such a case, the equitable powers of the court are not put forth to enjoin the commission of a crime, although that may incidentally result; they are put forth to protect legal rights against invasion of acts which, if committed, would cause injury for which the ordinary remedies at law would not afford adequate relief. 32 C.J. pp. 277, 278, 46 C.J. 763: 1 High on Injunctions, 4th Ed. 33; Hamilton-Brown Shoe Co. v. Saxey, 131 Mo. 212, 32 S.W. 1106, 52 Am.St.Rep. 622; In re Debs supra [158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092]."

The only fact upon which to base an injunction in the Miller case was that the defendant was performing barber services in his own home without a license as a barber. That would not violate any legal right of the public or injure the people in any way. The situation could be adequately treated under the criminal statute. For that reason no injunction was necessary for the protection of the public. In the case at bar, however, the method of making and collecting usurious loans involves injury not only to the borrower, who was illegally deprived of his money, but also those dependent upon him. That differentiates the Miller case from the case at bar. Judge Christianson's statement applies to the situation in the case now before us.

The question of whether or not there is a nuisance is a question of fact to be determined on the evidence in each case. Teinen v. Lally, 10 N.D. 153, 86 N.W. 356. Clearly the allegations of the complaint, together with the affidavits, if proven, are sufficient to show that the usurious, small loan business of the defendants comes within the definition of a public nuisance. Sec. 42–0101 NDRC 1943.

The small loan business described in the complaint indulged in unlawful practices constituting a public nuisance and a menace to public welfare. The state had a right to invoke the powers of equity to enjoin such practices. State ex rel. Moore v. Gillian, 141 Fla. 707, 193 So. 751.

> "Present-day cases reflect a very liberal attitude on the part of courts in the entertaining, at the instance of the state, jurisdiction to enjoin such acts." 28 Am.Jur. Injunctions, Sec. 151, p. 341, 91 A.L.R. 316.

Sec. 42–0201, NDRC 1943, authorizes the Attorney General to bring an action in the name of the state to abate and enjoin a nuisance. The granting of the temporary injunction and the appointment of a receiver was in the discretion of the trial court. Mevorah v. Goodman, N.D., 65 N.W.2d 278; Gunsch v. Gunsch, N.D., 69 N.W.2d 739, 748; Dickson v. Dows, 11 N.D. 404, 92 N.W. 797; Tobin v. Yankton Livestock Sales Co., D.C., 102 F.Supp. 797; Ladner v. Siegel, 298 Pa. 487, 148 A. 699, 68 A.L.R. 1172.

A suit for an injunction is an equitable proceeding which is designed to protect people by preventing unlawful acts which are against public policy and cause irreparable injury to civil or property rights or privileges of the people. To the state is entrusted the duty of protecting

the public against such injurious acts. The state can use injunctive procedure for that purpose in cases where remedy at law or by criminal prosecution would not be adequate under the circumstances and where the remedy in equity by injunction would furnish more effectual and complete relief. Richmond v. Miller, 70 N.D. 157, 292 N.W. 633; O'Conner v. Immele, 77 N.D. 346, 43 N.W.2d 649; In re Debs, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092; State v. Pacific Express Co., 80 Neb. 823, 115 N.W. 619, 18 L.R.A.,N.S., 664; State ex rel. Sorenson v. Ak-Sar-Ben Exposition Co., 118 Neb. 851, 226 N.W. 705; State ex rel. Spillman v. Heldt, 115 Neb. 435, 213 N.W. 578; 43 C.J.S. Injunctions § 123, p. 662; 28 Am.Jur. Injunction, Sec. 151, p. 341.

The orders of the District Court are affirmed.

BURKE, JOHNSON, SATHRE and MORRIS, JJ., concur.