### WALLING v. GULF STATES PAPER CORPORATION.

### No. 10687.

Circuit Court of Appeals, Fifth Circuit.

June 19, 1944.

Bessie Margolin, Asst. Sol., U. S. Dept. of Labor, and Morton Liftin, Atty., U. S. Dept. of Labor, both of Washington, D. C., for appellant.

Borden Burr, of Birmingham, Ala., and John D. McQueen, of Tuscaloosa, Ala., for appellee.

Before HUTCHESON, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

The Court below found that although there had occurred violations of Section 15(a) (1) of the Fair Labor Standards Act, 29 U.S.C.A. § 215(a) (1), in that the defendant had purchased pulpwood from producers who had not observed the wages and hours provisions of the Act, nevertheless, for more than sixty days before the filing of the complaint seeking the injunction there was full compliance with the Act by all of the producers selling pulpwood to the defendant except a very few who committed minor violations without the approval, consent, or knowledge of the defendant. The situation surrounding the parties, as found by the Court, is well stated in Paragraphs X–XV, inclusive, of the Findings of Fact:

"X. On the 15th day of July 1941, the plaintiff, acting through Robert T. Amis, Regional Director, and his Chief Inspector, Robert Till, in a conference with the Secretary and Treasurer of the defendant at its offices in Tuscaloosa, Alabama, stated in substance that while there were no pending charges against the defendant, the Wage and Hour Division was making an investigation of the paper industry along the same lines that investigation had been made and recently completed in the lumber industry; that the mill of the defendant was one of the many paper mills which were being investigated and that the investigation would concern the employees of the defendant and the employees of the suppliers of wood. It was further stated that, if during the progress of the investi-

gation or at its end, any irregularities or violations of the law developed, they would be brought to the attention of the defendant and opportunity would be given for their correction.

"On July 16, 1941, in confirmation of the statements made in a conference the preceding day between plaintiff's Director and Inspector and the Secretary Treasurer of defendant, the Regional Director wrote the defendant a letter, among other things stating that the contemplated investigation 'would begin the first of the next week' and that it would 'cover the operations of the corporation as to its own individual operation and the operations of all persons supplying wood to the mill'; that 'this investigation is merely for the purpose of determining facts relating to compliance or noncompliance with the Wage and Hour law'; that after obtaining the pertinent facts, he would 'discuss them with you and other officers of the corporation and advise you of the position of the Wage and Hour Division as to responsibility for such violations, if any, as are developed and what disposition should be made of the case.' The letter requested the 'full cooperation of the defendant in carrying on this investigation,' and advised the defendant that 'we expect to have an inspector at your mill at Tuscaloosa, on Monday, July 21, 1941,' and requested among other things 'a list reflecting the names and addresses of all persons who supply you with wood, indicating the amount of purchases and unit prices by months for the past six months.'

"The defendant gave to the plaintiff its assistance and cooperation and furnished his representatives all information including books and dates requested of it in connection with the said investigation.

"Immediately following the writing and delivery of this letter, the plaintiff began his investigation, which covered a period of substantially two months. Many investigators visited substantially all of the operations of those from whom the defendant purchased its pulpwood.

"The agents of the plaintiff failed to observe their assurances above set out, and neither during such investigation, nor upon its completion did the plaintiff make any report to the defendant as to the result of its investigation; the first notice given the defendant of the result of plaintiff's investigation was the filing of this suit on January 16, 1942.

"XI. The investigators of the plaintiff, in investigating the operations of those from whom the defendant purchased its pulpwood, discussed with most of the persons engaged in producing and selling pulpwood to the defendant the irregularities or violations of the Act found in their operations. Upon having these violations brought to their attention by the investigators, such producers and sellers demonstrated a willingness and desire to comply with the provisions of the Act. Some of them ceased producing and selling pulpwood to the defendant; others began at once to endeavor in good faith to come into compliance, and others, after ceasing for a short time the production of pulpwood, recommenced production and selling pulpwood to the defendant and endeavored to come into compliance with the Act.

"During the defendant's investigation, after finding a noncompliance with the Act, by some of the producers from whom it purchased pulpwood, the defendant paid for and segregated on its mill yard such pulpwood as it knew was then in transit from noncomplying producers, and it has not used in connection with its manufacturing operations any of the said pulpwood which was so produced.

"The defendant, during and after its investigation, refused to make any further purchases or to receive any further deliveries of pulpwood from such noncomplying suppliers, unless and until they had reasonably satisfied the defendant that the violations of the Act which had come to light had ceased, and insisted that such producers make restitution under the terms of the Act, which was done generally or in most instances.

"XII. On March 23rd, 1942, the date of filing defendant's answer, the defendant did not have on hand any pulpwood delivered to it prior to November 1st, 1941, nor any paper or paper products of which any such pulpwood was an ingredient.

"During and subsequent to the investigation made by the plaintiff, most of those engaged in the production of pulpwood purchased by the defendant, in good faith, began to come into compliance with the provisions of the Act and from and after November 1, 1941, there was a full compliance, with the exception of a very few sellers, who, to a small extent, continued to violate some of the provisions of the Act. Some of these violations continued

in a lesser degree after this time, and at the time of the closing of the hearing, there were a few violations de minimis. Such minor violations were not committed with the approval, consent, or knowledge of the defendant.

"XIII. The defendant, through the testimony of its responsible officers, has assured the court that it is endeavoring, in good faith, and will continue to do all that is reasonably practical to refrain from purchasing or using in the manufacture of its products, any pulpwood produced by any noncomplying employer. The Court believes the defendant is doing all that is reasonably practical to refrain from purchasing or using in the manufacture of its products, any pulpwood produced in noncompliance with the Act; and, notwithstanding the violations above referred to, it finds that there is no reasonable cause for believing that the defendant will not in the future continue to live up to and keep its assurances in this regard.

"XIV. The evidence does not show that from and after November 1, 1941, the prices paid for pulpwood by the defendant were inadequate to enable a reasonably efficient employer engaged in the production of pulpwood to pay his employees in accordance with the provisions of the Act and meet other necessary expenses and leave the employer a fair profit.

"XV. The defendant has not threatened to purchase or use in the manufacture of its goods any pulpwood produced in noncompliance with the provisions of the Act, and beginning with the purchase orders for pulpwood issued by it in and after the month of March 1942, the defendant has inserted in its purchase orders a provision reading as follows: 'As a condition of this order, the seller warrants and agrees that all wood previously delivered hereunder has been produced and that all wood hereafter delivered will be produced in compliance with the Fair Labor Standards Act of 1938' and required all of its sellers to sign an acceptance of such purchase order.

"The defendant has also insisted on its sellers keeping records in reference to the wages and hours of service of their employees and of having such records subject to inspection."

The lower Court concluded that since the violations of Sections 6 and 7 of the wages and hours provisions of the Act were not done by the defendant as an employer against its own employees but by others from whom the defendant merely purchased products, and upon whom the primary obligation rested, the discretion of the Court in the matter of issuing an injunction should be differently weighed than if the defendant itself had failed or refused to comply with the wages and hours provisions of the law.

The Court further held:

"III. In determining whether or not there is 'cause shown' for the issuance of an injunction, the following principles apply:

"(1) The equities of the case must be in favor of the party seeking the injunctive relief.

"(2) The purpose of an injunction is not to punish a guilty party for past violations, but to prevent his future noncompliance with the law.

"(3) The issuance of the injunction, admitting past violations, should depend upon whether there is a reasonable likelihood of violations of the law in the future.

"(4) The question as to whether more good or more harm will result from the issuance of the injunction prayed for should be considered.

"(5) The issuance vel non of the injunction in this cause rests in the discretion of the Court.

"IV. While the assurances of the plaintiff that he would consult with and advise the defendant of the result of his investigation does not estop the plaintiff from bringing and prosecuting this suit, this should be and is considered by the Court in weighing the question of good faith, which is an issue in this cause."

The findings of fact by the lower Court were well supported by the evidence. The conclusion of law that the granting or refusal of an injunction in such circumstances is a matter within the discretion of the Court is well supported by Hecht Co. v. Bowles, Price Administrator, 321 U.S. 321, 64 S.Ct. 587; Fleming v. Jacksonville Paper Co., 5 Cir., 128 F.2d 395, and Walling, Adm'r v. Florida Hardware Co., 5 Cir., 142 F.2d 444.

The decree is affirmed.