## TOBIN v. YANKTON LIVESTOCK SALES CO.

### Civ. No. 731–S.D.

United States District Court
D. South Dakota.

Jan. 30, 1952.

William S. Tyson, Solicitor, John J. Babe, Asst. Sol., Dept. of Labor, Washington, D. C., Francis M. Cook, Reg. Atty., Wm. C. Cull, and Stanford C. Madden, Attys., all of Kansas City, Mo., for plaintiff.

Frank J. Brady, Yankton, S. D., for defendant.

WYMAN, District judge.

By the above entitled action the plaintiff, as Secretary of Labor, seeks to enjoin the defendant from certain violations of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., and regulations promulgated thereunder.

There appears to be no material dispute as to the essential facts of the case which,

as admitted by the pleadings and disclosed by the evidence are, in substance, as follows: Defendant is a South Dakota Corporation engaged in the business of selling livestock which is consigned to it on a commission basis, with offices and other facilities incident to the conduct of its business located just north of the city of Yankton, South Dakota. Livestock from South Dakota and adjoining states is consigned to the defendant for sale, and some of the livestock sold is shipped to points outside of the State of South Dakota by the purchasers thereof. The defendant also buys hogs on a commission basis for Armour & Co. The hogs so purchased by the defendant are received at the sales yard of the defendant by Armour & Co. and thereafter transferred by Armour & Co. from Yankton, South Dakota to Sioux City, Iowa, by truck. Defendant employs about fourteen regular employees in the conduct of its business. During the period from July, 1949 until July, 1951, some of said employees were paid a straight hourly wage and some were paid a weekly wage. During said period said employees worked on an average from 50 to 70 hours per week and received no compensation as overtime. For some time prior to July 1, 1951, Thomas Simonsen and Ronald Keegan were in the employ of the defendant. Each of said employees worked and drove motor trucks about the yards of said defendant, and during said period both of said employees were under the age of 18 years. The record kept by the defendant prior to July 1, 1951 disclosed only the names of its employees, the total amount of weekly wages received by each of them and the amount of deductions for social security and income taxes. In June, 1951, an investigator for the Wage and Hour Division of the Labor Department went to Yankton and investigated the manner and conduct of defendant's business and called defendant's attention to its failure to comply with the provisions of the Fair Labor Standards Act and the regulations promulgated thereunder at which time one of the officers of said corporation stated, in effect, that said defendant was not engaged in interstate commerce and that

none of its activities were such as to bring them within the scope of the Fair Labor Standards Act. Notwithstanding said contention on the part of said defendant, the evidence shows that it changed its system of employment and payment of all of its employees and the manner of keeping its records so as to bring its activities in compliance with the provisions of the Fair Labor Standards Act sometime prior to the 1st of July, 1951, and more than one month prior to the commencement of this action, and the evidence discloses no violation of said law and regulations after the 1st day of July, 1951.

This action was instituted on August 6, 1951, and no investigation other than that made by the plaintiff in June, 1951, has been made.

The plaintiff contends that even if the defendant has conducted its business in compliance with the laws and regulations of the government since the 1st of July, 1951, the fact that the defendant contended then and still contends that it is not engaged in interstate commerce and that its business does not come within the purview of the Fair Labor Standards Act or the Wage and Hour law or regulations above referred to, is sufficient ground for the granting of the injunction prayed for. With this contention I am unable to agree. Injunction has always been regarded as a drastic and extraordinary remedy to be granted or denied in the sound discretion of the Court. It is an equitable writ and should be resorted to only for the purpose of preventing future wrong. Whether or not a prayer for injunction is granted or denied must depend upon the facts and circumstances of each separate case. It is undoubtedly true that under certain facts and conditions the refusal on the part of the defendant to admit that its operations are such as come within the contemplation of the law might be a circumstance strongly indicating a real danger of future violation, but where the defendant has no intention of violating the law, and where the failure to comply with its provisions is prompted solely by a good faith understanding and opinion that its business activities are not such as to be subject to the law, and where

the defendant, after being notified of its failure to comply with the law has been in compliance since more than one month prior to the commencement of the action, I do not feel that its good faith contention that its business is not covered by the statute or regulations should be regarded as sufficient grounds for the granting of an injunction.

There is nothing in the evidence that indicates that the defendant knowingly intended to violate the law or regulations of the United States, and its failure to comply with the regulations and the law prior to the investigation above referred to, appears to have been prompted solely by the sincere, good faith opinion and assumption that the conduct of its business was not such as to make it subject to the Fair Labor Standards Act, or the Wage and Hour provisions. That the defendant should honestly entertain such an opinion is not at all unusual. The facts are that the original interpretation of the scope and meaning of the commerce clause has been enlarged and extended by the acts of Congress and the courts until experienced lawyers are frequently at a loss to know just what does and does not affect the flow of interstate commerce.

In view of the record I am convinced that the defendant's failure to conduct its business in conformity with the Fair Labor Standards Act and regulations in this case, and its contention that said laws and regulations do not apply to its business, afford no grounds for apprehension of any future violations, and in view of the fact that notwithstanding its good faith belief that it was not legally required to do so, and had corrected the irregularities when it was informed of the contentions of the plaintiff, and its business has been conducted in conformity with said laws and regulations since the 1st of July, 1951.

While I am convinced that the conduct of defendant's business is such as to make it subject to the Fair Labor Standards Act and that the irregularities complained of were in violation thereof, I am firmly of the opinion that there was no intention on the part of the defendant to violate said Act, and that there is no rational probability or danger of any future recurrence of the same. Hence, the plaintiff's prayer for injunction should be and is denied.