**TOBIN v. FOWLER & WILLIAMS,**
Inc. et al.

Civ. A. No. 4153.

United States District Court
M. D. Pennsylvania.

Sept. 16, 1952.

Louis Weiner, Asst. Regional Attorney U. S. Dept. of Labor, Philadelphia, Pa.; for plaintiff.

Eugene Nogi (of Nogi, O'Malley & Harris), Scranton, Pa., for defendants.

WATSON, Chief Judge.

This is an action brought to enjoin the defendants from violating Section 15(a) (1, 2, 5), of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq., hereafter referred to as the Act. Defendants are charged with violating the overtime and record keeping provisions of the Act with respect to four employees. After taking testimony and hearing arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

1. Defendant Fowler and Williams, Inc. is a Pennsylvania corporation, having its principal office and place of business at 1300 Meylert Avenue, Scranton, Lackawanna County, Pennsylvania, where it is engaged in the transportation of freight in interstate commerce by motor vehicle and in the operation of a terminal and garage in connection therewith.

2. Defendant Hilton G. Fowler is President and Treasurer of said corporation and is one of the principal stockholders thereof, and defendant Clem Palevich is Secretary of the corporation. Both of the individual defendants reside in Scranton and are actively engaged in the management and operation of the business of the defendant corporation.

3. Defendant corporation employs approximately three hundred employees, forty of whom are subject to the provisions of the Fair Labor Standards Act. The present proceeding concerns only four employees.

4. Louis Urso, Charles Cottell, Edward Peters and John Maus have been employed by defendants in and about their place of business in Scranton during the period from March, 1949, to the present time. Throughout the period of their employment by defendants, the said employees worked on motor vehicles and equipment used by defendants in their interstate business.

5. Edward Peters works as a "painter" and his duties require him to spend most of his time in painting the bodies of motor vehicles used by defendants in their business. Charles Cottell, Louis Urso and John Maus are known as "utility" men and their duties require them to spend most of their time in greasing, washing, oiling, and refueling motor vehicles of defendants used in their business. All duties of said employees are performed in defendants' garage in Scranton, and are essential to the maintenance of defendants' motor vehicles and instrumentalities of commerce, and are an essential and integral part of interstate commerce.

6. All of the named employees have been, and are now, members of the International Association of Machinists (A.F. of L.), Lodge Number 1971, hereafter referred to as I.A.M., since August, 1950, and prior thereto were members of the General Drivers and Helpers Local Union Number 229, hereafter referred to as the Drivers Union.

7. The I.A.M., a duly qualified labor union representing the aforesaid employees, entered into a collective bargaining agreement with defendants dated October 1, 1950 for a two-year period ending September 30, 1952. The Drivers Union, also representing the said employees, entered into a collective bargaining agreement with the defendants dated May 4, 1948.

8. Paragraph V of the collective bargaining agreement with the I.A.M. provides that overtime shall be paid after 48 hours have been worked in any workweek. Paragraph III of the collective bargaining agreement with the Drivers Union similarly provides that time and one-half the regular hourly rate of pay shall be paid for

all time in excess of 48 hours in a work-week.

9. Paragraph VII of the collective bargaining agreement with the I.A.M. for the two-year period, October 1950 to October 1952, provides for hourly rates of pay for specific job classifications as follows: 

Journeymen Mechanics $1.68
Mechanics (B) 1.55
Helpers (Mechanics and Bodymen) 1.45
Journeymen Bodymen 1.68
Utility Men 1.30

Paragraph II of the collective bargaining agreement with the Drivers Union provides for hourly rates of pay for specific job classifications as follows:

Journeymen Mechanics $1.45
Second Class Mechanics 1.32
Journeymen Bodymen 1.45
Second Class Bodymen 1.32
Helpers 1.15
Utility Men 1.07

  (Gasser, Greaser, Washer & Tire Changer)

10. Louis Urso had been employed by defendants since March, 1947 as a utility man. His regular hourly rate of pay under the respective union contracts was $1.07 until October, 1949, $1.15 until October, 1950, and $1.30 from October, 1950 to September, 1951. Urso generally worked a 48-hour workweek during the two-year period of investigation, but was not compensated for the hours worked in excess of 40 hours per week at time and one-half his regular rate of pay. For example, during the workweek ending April 20, 1951, he worked 48 hours and was paid straight time wages of $48 and overtime wages of $14.-40, or gross wages of $62.40. In arriving at the straight and overtime wage, the defendants used a reduced hourly rate of $1.20, rather than the regular hourly rate of $1.30 specified for utility men in the union contract. This reduced rate of $1.20 was obtained by multiplying the regular hourly rate of $1.30 by 48 hours to obtain straight time earnings, and then dividing this amount by 52 hours, which represented "boosted" hours rather than actual hours worked. On this basis, Urso was paid "straight time" wages of $48 (40 hours x

$1.20) and "overtime", $14.40 (8 hours x $1.80) or gross wages of $62.40. However, if Urso's straight time wages had been based on his regular hourly rate of $1.30, he would have received straight time wages of $52 (40 hours x $1.30) and overtime of $15.60 (8 hours x $1.95) or gross wages of $67.60. The same device of reducing the regular hourly rate by "boosting" the hours of work was used when Urso's regular rate was $1.15 an hour.

11. This same formula of reducing the regular hourly rate of pay specified in the union contracts was used as to John Maus, Charles Cottell, and Edward Peters.

12. All of the aforesaid employees worked in excess of 40 hours in many workweeks without receiving overtime pay at the rate of time and one-half the regular hourly rate at which they were employed by defendants.

13. For purposes of computing straight time and overtime compensation for each of the said employees, defendants used a lower hourly rate of pay than the regular hourly rate of pay at which the men were employed without the agreement or consent of either the employees or the union representing the employees.

14. Defendants paid said employees overtime at a lower hourly rate instead of the regular hourly rate of pay at which the employees were employed, thereby resulting in straight time payment for all hours worked by them, including hours in excess of 40.

15. Defendant's records do not specify the regular hourly rate of pay in any workweek worked by Edward Peters, Louis Urso, Charles Cottell, or John Maus during the period of the investigation.

16. Since July 28, 1951, the said employees have not worked in excess of 40 hours a week and have been paid at their regular hourly rate of pay.

17. There is no reasonable likelihood that the defendants will violate the Act in the future.

### Discussion

The questions presented in this case are (1) Did the defendants violate the overtime and record-keeping provisions of the

Act with respect to employees Urso, Maus, Cottell, and Peters; and (2) Should an injunction issue.

Defendants point out that their books and records had ben examined and checked by employees of the Department of Labor for a period of at least 6 to 7 years prior to the date of the alleged violations and in each instance were informed that the method of computation employed by them was correct. It was not until May 30, 1951, that Wage-Hour Investigator Mrs. Mullaney informed the defendants that their method of computing overtime was not in accordance with the Act. Defendants contended that their method was not in violation of the Act, and at the time of the trial still expressed the same opinion. Notwithstanding defendants' belief that their method of computation did not violate the Act, it is admitted by the plaintiff that the defendants ceased to violate the Act after July 28, 1951, by eliminating the overtime hours and placing the said employees on a 40-hour workweek.

■■ The Court is convinced that the method or formula used by the defendants for computing the earnings of the said employees, and the keeping of records thereto, constituted violations of the Act. The question then arises as to whether an injunction will serve any useful purpose, in view of the fact that the defendants, after being notified of their failure to comply with the Act, have been in compliance since July 28, 1951, which was three months prior to the filing of this action.

Despite the voluntary cessation of the alleged illegal activity, the plaintiff contends it is entitled to an injunction, because the defendants still maintain that the formula under which the employees were paid was valid, and there is no assurance that the defendants in the future will not apply the same formula for computing earnings if the employees once again work in excess of 40 hours.

The same position was taken by the Department of Labor in Tobin v. Yankton Livestock Sales Co., D.C.S.D.1952, 102 F. Supp. 797, 798, and the court in denying the prayer for an injunction stated, "It is undoubtedly true that under certain facts and conditions the refusal on the part of the defendant to admit that its operations are such as come within the contemplation of the law might be a circumstance strongly indicating a real danger of future violation, but where the defendant has no intention of violating the law, and where the failure to comply with its provisions is prompted solely by a good faith understanding and opinion that its business activities are not such as to be subject to the law, and where the defendant, after being notified of its failure to comply with the law has been in compliance since more than one month prior to the commencement of the action, I do not feel that its good faith contention that its business is not covered by the statute or regulations should be regarded as sufficient grounds for the granting of an injunction."

■■ An injunction is a drastic and extraordinary remedy to be granted or denied in the sound discretion of the court. The purpose of an injunction is not to punish a guilty party for past violations but to prevent his future noncompliance with the law. The issuance of the injunction, admitting past violations, should depend upon whether there is a reasonable likelihood of violations of the law in the future. Walling v. Gulf States Paper Corp., D.C.N.D. Ala.N.D.1942, 53 F.Supp. 619, 5 Cir., affirmed 143 F.2d 301.

■ There is nothing in the evidence to indicate that defendants knowingly intended to violate the Act, and the Court deems it very unlikely that the defendants will resort to a method of computation which the Department of Labor, and now the Court, have found to be in violation of the Act. Being convinced that there is no reasonable likelihood of a recurrence of the wrong, the Court, in the exercise of its discretion, will deny plaintiff's prayer for an injunction and dismiss the complaint.

## Conclusions of Law

1. The Court has jurisdiction of the cause of action and the parties herein.

2. The defendants at all material times herein were engaged in interstate commerce and in the production of goods for

interstate commerce within the meaning of the Fair Labor Standards Act.

3. The employees in question were engaged in the production of goods for interstate commerce within the meaning of the Fair Labor Standards Act, and are not exempt under Section 13(b) (1) from coverage of the Act.

4. A contractual provision in the collective bargaining agreements between defendants and unions representing their employees, which denies the said covered and nonexempt employees the right to overtime compensation for hours worked in excess of 40 in any workweek, is not binding.

5. Failure of defendants to pay the said employees overtime for hours worked in excess of 40 in any workweek at the rate of time and one-half the regular hourly rate at which they were employed was a violation of the overtime provisions of the Fair Labor Standards Act.

6. The regular hourly rate at which said employees were employed was the straight time rate of pay agreed upon at the time of hiring and specified in the collective bargaining agreements entered into by and between the defendants and the unions representing the said employees.

7. Defendants' unilateral action in varying the regular hourly rate of pay agreed upon with their employees, and set forth in the collective bargaining agreements with the unions representing them, by reducing the said regular hourly rate of pay for purposes of computing and paying straight time and overtime to the employees in question is invalid and of no legal effect.

8. Defendants' failure to make, keep and preserve a record of the regular hourly rate of pay of said employees for workweeks when overtime is worked and overtime excess compensation is due as provided under Section 7(a) of the Act, constitutes a violation of Section 11(c) and Part 516.2(6) of the Regulations issued by the Secretary of Labor.

9. Defendants ceased to violate the Act after July 28, 1951.

10. An injunction is a drastic and extraordinary remedy to be granted or denied in the sound discretion of the Court.

11. The purpose of an injunction is not to punish a guilty party for past violations but to prevent his future noncompliance with the law.

12. The issuance of the injunction should depend upon whether there is a reasonable likelihood of violations of the law in the future, which likelihood does not exist in this case.

13. Defendants' contention that their method for the computation of earnings was not in violation of the Act, without more, is not sufficient grounds for the granting of an injunction.

14. Plaintiff's prayer for an injunction will be denied and the complaint dismissed.