**STATE of Iowa ex rel. Richard TURNER, Attorney General of Iowa, Appellee,**

v.

**UNITED–BUCKINGHAM FREIGHT LINES, INC., Appellant.**

**No. 55706.**

Supreme Court of Iowa.

Oct. 17, 1973.

Frank W. Davis, Jr., Des Moines, for appellant.

Richard C. Turner, Atty. Gen., John E. Beamer and Larry M. Blumberg, Asst. Attys. Gen., Des Moines, for appellee.

McCORMICK, Justice.

Defendant trucking company, an interstate common carrier, appeals trial court's decree enjoining it from violating Code § 321.457(6). That simple misdemeanor statute prohibits "double-bottom" trucks more than 60 feet in length from operating on Iowa highways. Plaintiff's petition in equity alleged defendant deliberately violated the statute so often its conduct in doing so is a nuisance which should be enjoined. Trial court found that between July 1, 1970, and October 8, 1971, a period of approximately 15 months ending five days before the State's petition was filed in this case, defendant breached the statute 1730 times. Violations were occurring at an increasing rate. The court held defendant's conduct constituted a nuisance and entered a decree April 13, 1972, enjoining future violations. We affirm the trial court.

Defendant asserts trial court erred (1) in finding violations of the statute are a trespass, (2) in concluding defendant's repeated violations are a public nuisance, and (3) in granting the injunction. We do not find it necessary to answer the first contention because we believe trial court's decree must be upheld on the basis of answers to the second and third contentions.

We need not adopt trial court's premise in order to sustain its conclusion. Van Hosen v. Bankers Trust Company, 200 N.W.2d 504, 509 (Iowa 1972). The determinative issues are whether a court of equity can enjoin violation of a traffic law which a defendant has repeatedly and intentionally violated and, if so, whether in this case it should do so.

I. *Is defendant's conduct subject to injunction?* Apart from the issue of trespass, defendant contends its violations of § 321.457(6) cannot be enjoined because they do not constitute a public nuisance. This contention rests on assertions that violations of a criminal statute cannot be enjoined and that the record in this case is devoid of evidence of injury or damage required to support an injunction.

■ As to the first assertion we recently observed "where * * * a statutory enactment is regulatory in nature having for its primary purpose the promotion of public interest and welfare, then attendant criminality neither gives nor ousts jurisdiction in equity." Sound Storm Ent., Inc. v. Keefe, In & For Fayette Cty., 209 N.W.2d 560, 566 (Iowa 1973). Although a court of equity will not enjoin the commission of acts simply because they are crimes, it will enjoin them "if they affect public rights or privileges or endanger public health, regardless of whether such acts are denounced as crimes." State v. Red Owl Stores, Inc., 253 Minn. 236, 245, 92 N.W.2d 103, 110 (1958); see 42 Am.Jur.2d Injunctions, § 157 at 918.

■ A concise statement of the general rule appears in an annotation at 40 A.L.R. 1145, 1147:

"The principle underlying the cases is that the government may enjoin certain acts which amount to a crime or a violation of the criminal statutes, not because the act complained of is a crime, but in spite of the fact that it is a crime. In other words, when the state * * * seeks to invoke the jurisdiction of a court of equity to protect by injunction some right, or to remedy some wrong, the inquiry is, as it is in cases of an individual seeking the aid of the 'strong arm of equity,' Do the facts presented show the need of the intervention of equity for the protection of rights cognizable by equity? And if this inquiry is answered in the affirmative the injunction will issue, though it may, as an incident to its promulgation, restrain the commission of a crime."

Clearly, conduct amounting to violation of a criminal statute can in a proper case be enjoined. Defendant's contrary assertion is untenable.

■ We also believe § 321.457(6) is the kind of statute which regulates conduct subject to equitable jurisdiction. It is a traffic law enacted under the legislature's police power to promote public safety and welfare. Specifically, as a statute limiting the length of trucks on our highways, it is intended to keep the highways safe for other motorists. See Wood Brothers Thresher Co. v. Eicher, 231 Iowa 550, 560, 1 N.W.2d 655, 660 (1942).

■ It is not part of the State's burden to establish that the legislative policy manifest in the statute is justified or that defendant's repeated deliberate violations did in fact cause accidents. We recently said, "The State has an interest in seeing that the law is not continually violated. Where a statute is openly, publicly, repeatedly, continuously, persistently and intentionally violated a public nuisance is created." State ex rel. Turner v. Younker Brothers, Inc., 210 N.W.2d 550, 564 (Iowa 1973). The public is injured when the integrity of the statute is thereby undermined. Whether such conduct is denominated a public nuisance or not, the need for equitable intervention may thus be established. The label is not controlling. State ex rel. Beck v. Basham, 146 Kan. 181, 186, 70 P.2d 24, 26–27 (1937), and citations; see also National Ass'n of Let. Car. v. Independent Post S. of A. Inc., 336 F.Supp. 804 (W.D.

Okl.1971); Planning and Zoning Com'n v. Zemel Brothers, Inc., 29 Conn.Sup. 45, 270 A.2d 562 (1970); Montana Milk Control Board v. Rehberg, 141 Mont. 149, 376 P.2d 508 (1962).

■ We hold a court of equity has power to enjoin violation of a traffic law like § 321.457(6) which a defendant has repeatedly and intentionally violated. Although our review of the record in this equity case is de novo, trial court's findings of fact are not controverted. In sending its overlength trucks into this state at a rate of more than 25 a week for 15 months, incurring fines of more than $30,000, defendant was not acting through inadvertence or mere carelessness. We find defendant did openly, publicly, repeatedly, continuously, persistently, and intentionally violate the statute to the detriment of public interest in its integrity and purpose. We therefore reject defendant's assertion there is no evidence of injury or damage.

Trial court was right in concluding defendant's conduct was of a nature subject to injunction.

II. *Should defendant be enjoined in this case?* In resisting issuance of an injunction in this case, defendant contends the State failed to establish a threat of irreparable injury. This contention is based on arguments no past injury has been shown and no evidence was offered to show any likelihood of future violations. Defendant offered evidence there was only one violation of the statute in the five month period between the commencement of the suit and the date of trial.

■ Defendant's argument relating to past injury has already been answered. It appears defendant takes the novel position the public policy of this state is satisfied when its laws are violated so long as the offender pays the price for his transgressions. Under that approach, where the price is treated as small enough to be absorbed as an acceptable cost of doing business, a statute which is intended to deter

violations becomes a licensing statute under which such violations are committed with impunity. Our traffic laws are designed to prohibit and prevent unlawful conduct rather than license it. If they fail in their purpose as to a particular offender, the strong arm of a court of equity may intervene to vindicate the public interest in the integrity of its laws.

■ We would be more impressed by defendant's argument concerning future obedience to the statute without an injunction if the chilling effect of a possible injunction had not been required to stop past misconduct. The record demonstrates a threat of irreparable injury in that § 321.457(6) "does not offer a speedy, adequate remedy at law to prevent the practice[s] detailed here." State ex rel. Turner v. Younker Brothers, Inc., supra, 210 N.W.2d at 565; see Planning and Zoning Com'n v. Zemel Brothers, Inc., supra; State v. Hooker, 87 N.W.2d 337 (N.D.1957).

Additional considerations support issuance of the injunction. It is sought as a preventive rather than curative remedy. The conduct sought to be prevented is already unlawful. And it is conduct over which defendant has obvious control. No one suggests defendant, as an interstate common carrier, could not comply with the law by simply ordering that its overlength double-bottom trucks not be driven in this state. The statute is not like a rule of the road such as a prohibition against speeding where the principal actor is the driver rather than the employer.

Nor are we impressed with the idea the statute might be obeyed if courts jailed defendant's drivers instead of fining them. See § 321.482, The Code. It is the court and not the State which possesses sentencing discretion. We have disapproved adoption of predetermined fixed sentencing policies by judges, and it would be improper for us to suggest they adopt such a policy in this situation. State v. Jackson, 204 N.W.2d 915 (Iowa 1973). In addition although jail sentences would undoubtedly

have a coercive effect, they would punish the drivers for infractions within the primary responsibility of their corporate employer. We leave sentencing discretion under § 321.457(6) with the sentencing judge where it belongs. *Id.* at 917 ("Each judge must grapple with the facts and circumstances in the case before him and arrive at the sentence he regards as right.").

Although the injunctive power must be used sparingly, this is an exceptional case in which its use is appropriate and necessary. Trial court was right in enjoining defendant from future violations of the statute.

Affirmed.

All Justices concur except MOORE, C. J., and REES, J., who concur specially and RAWLINGS, J., who takes no part.

REES, Justice (concurring specially).

I concur in the result only.

I. I am satisfied the showing that defendant breached the statute proscribing the operation of double-bottom trucks 1730 times in a 15-month period justified the trial court's granting of an injunction. A stronger case could have been made by the State by showing damage to highways resulting from the operation of such vehicles, or the potential hazards to the motoring public due to their operation.

II. However, I cannot, in reflecting upon the broad sweep of the opinion, fail to express my concern over the precedential effect of our affirmance of the trial court here, in future cases where equitable jurisdiction is invoked to enjoin conduct which lies within the proscription of our criminal statutes.

III. In general, injunction is not available to enforce the criminal law. In Martin v. Beaver, 238 Iowa 1143, 1149, 29 N.W.2d 555, 558 (1947), this court enunciated the following general proposition:

"Courts do not ordinarily issue injunctions to prevent criminal acts. Moir v. Moir, 182 Iowa 370, 165 N.W. 1001; 43 C.J.S., Injunctions, § 150. In said section 150 it is said: 'Except where there is express statutory authority therefor, equity has no criminal jurisdiction, and acts or omissions will not be enjoined merely on the ground that they constitute a violation of law and are punishable as crimes. Under ordinary circumstances a complete and adequate remedy for the violation of the criminal statutes of a state and of municipal ordinances is afforded by the courts of law; and, if a criminal prosecution will constitute an effectual protection against the acts or omissions complained of, no grounds exist for relief by injunction.' The case then enumerates a number of objections to 'criminal equity'.

"In 28 Am.Jur. 336, § 148, the same doctrine is announced and it is there stated: 'It may be observed at the outset that equity is in no sense a court of criminal jurisdiction, and its reluctance to intervene in matters purely criminal or penal is recognized universally. * * * The rule which prevents courts of chancery from interfering with the administration of the criminal laws of the state is a wise one, founded upon sound principles of public policy. Any other rule would result in much confusion and embarrassment in preserving peace and order and in enforcing the police powers of the state generally.' "

The policy reason for the rule is found at 43 C.J.S. Injunctions § 150, p. 762:

"The objections to 'criminal equity' are that it deprives defendant of his jury trial; that it deprives him of the protection of the higher burden of proof required in criminal prosecutions; that, after imprisonment and fine for violation of an equity injunction, defendant may be subjected under the criminal law to punishment for the same acts; that it substitutes for the definite penalties fixed by the legislature whatever punishment for contempt a particular judge

may see fit to exact; that it is often no more than an attempt to overcome by circumvention the supposed shortcomings of jurors; and that it may result, or induce the public to believe that it results, in the arbitrary exercise of power and in government by injunction. The possibility that many persons will violate the law and that many suits will be required to enforce it, the mere fact that the officers charged with the duty of enforcing the provisions of the criminal law neglect or refuse to perform their duty in this regard, the failure of local juries to convict, or the fact that the punishment for the crime is inadequate does not warrant relief by injunction."

I would not depart in the usual case from the above pronouncement in Martin v. Beaver, *supra*. Sound public policy dictates that equity should not interfere with the administration of our criminal laws.

MOORE, C. J., joins this special concurrence.