Harold E. CARTER et al., Appellants,

v.

Kenneth JERNIGAN, Director, Iowa Commission For the Blind, et al., Appellees.

No. 56266.

Supreme Court of Iowa.

March 19, 1975.

**132**

Dan Johnston, New York City, and Durward McDaniel, Washington, D.C., for appellants.

Richard C. Turner, Atty. Gen., and Richard E. Haesemeyer, Sol. Gen., for appellees.

Verne Lawyer, Eugene Davis, and Steven C. Cross, Des Moines, for appellee Jernigan.

Roger H. Ivie, Des Moines, for appellee Hemken.

William Wimer, Des Moines, for appellees Bonnell and Johnson.

UHLENHOPP, Justice.

The principal question in this appeal is whether the trial court properly sustained defendants' motion for summary judgment. We recently stated the principle governing such motions in Daboll v. Hoden, 222 N.W.2d 727, 731 (Iowa):

> Where there is no genuine issue of fact to be decided, the party with a just cause should be able to obtain a judgment promptly and without the expense and delay of a trial. . . . "In ruling on a motion for summary judgment, the court's function is to determine whether such a genuine issue exists, not to decide the merits of one which does." Bauer v. Stern Finance Company, 169 N.W.2d [850] at 853.

The burden is upon the party moving for summary judgment to show absence of any genuine issue of a material fact. All material properly before the court must be viewed in the light most favorable to the opposing party.

The legislature established and funded a three-member Iowa Commission for the Blind. Code 1973, ch. 601B; 65th Gen.Assem. ch. 1012, § 1. The commission has authority to appoint a director and assistants. Code, § 601B.3. Under § 601B.6, the commission may perform a variety of functions to help blind people, such as assisting in marketing products of blind workers, ameliorating the condition of blind people by instruction in their homes, ascertaining the causes of blindness, providing vocational training including workshops, and maintaining a center for training, orientation, and adjustment. See 1972 Op.Iowa Atty. Gen. 497.

From discovery depositions of plaintiffs taken by defendants, we learn that two private associations of blind people exist, the American Council of the Blind and the National Federation of the Blind (NFB). Apparently these associations hold conflicting philosophies about the way to help blind people.

The commissioners appointed Kenneth Jernigan as commission director. Mr. Jernigan holds the philosophy of the NFB and has been active in promoting that philosophy and the NFB itself.

Most of the plaintiffs in this suit are blind people. Plaintiffs commenced this action against the commission, the commissioners, and the director, alleging in their petition that defendants converted commission funds and other resources to the use of the NFB and commission officials and employees. Plaintiffs asked the court to enjoin defendants from converting and misusing commission funds and other resources. Defendants answered denying plaintiffs' allegations.

Defendants took discovery depositions of plaintiffs to ascertain what admissible evidence, if any, plaintiffs possess to support their allegations in the petition. The depositions disclose the main basis of the allegations to be plaintiffs' claim that the commission director and employees use commission time and facilities, which would other-

wise be directly available to blind people of Iowa, to promote the NFB and to handle its affairs, and also that some commission personnel use commission employees, facilities, telephones, and postage for private purposes. Most of the deposition testimony is hearsay, but a sprinkling of competent evidence exists in it.

Defendants' discovery depositions of plaintiffs also reveal that plaintiffs are not the individuals who possess personal knowledge about most of the allegations of the petition; defendants and other commission personnel would be the ones personally aware of the truth or falsity of the allegations. Plaintiffs filed interrogatories to discover facts of defendants and also desired to take defendants' depositions.

Defendants filed a three-part motion: (1) for adjudication of a number of specified law points, (2) for summary judgment, and (3) for stay of further proceedings, including discovery by plaintiffs, until the first two parts of the motion were ruled on. Plaintiffs filed a resistance to the motion for summary judgment, supported by affidavits containing some competent evidence and some hearsay. Alternatively, plaintiffs moved for a ruling on the propriety of their interrogatories and a 30-day continuance in which to take depositions of defendants and their agents.

After hearing, the trial court held on the first part of defendants' motion that plaintiffs have standing to sue, that the existence of a crime would not defeat the suit for injunction, but that the depositions taken by defendants do not disclose any unlawful acts by defendants. As to the second and third parts of defendants' motion, the court granted summary judgment to defendants and denied discovery by plaintiffs, stating, "To offer further discovery would be to permit a fishing expedition into defendants' files without any substantial basis." Plaintiffs appealed.

Did the trial court properly adjudicate as a law point that the depositions which defendants took do not disclose wrongful acts by defendants? Did the trial court properly grant defendants summary judgment and, in that connection, properly deny discovery by plaintiffs?

I. *Adjudication of Law Point.* Plaintiffs do not question that the commission has some discretion in carrying out its statutorily prescribed duties. Plaintiffs claim, however, that defendants went beyond this discretion and converted funds and resources in unauthorized ways to promote the NFB and the private interests of commission officials and employees. In their answer, defendants deny these allegations. An issue of fact thus exists under the pleadings.

Plaintiffs appeal from the law-point ruling which was in defendants' favor—that defendants' acts were within their discretion. The court arrived at this ruling by stating, "The Court has examined the depositions of the plaintiffs and found no acts the plaintiffs contend the defendants did that are unlawful and thus subject to the Court's review."

■■ One of the principal fact questions in the case is whether defendants committed acts which were beyond their discretion. The parties framed this fact issue in the pleadings, and the trial court could not resolve the issue on a motion to adjudicate law points. Such motions, authorized by rule 105, Rules of Civil Procedure, serve only to determine questions of law which arise on uncontroverted pleadings and may not be used to resolve fact disputes. Reynolds v. Nowotny, 213 N.W.2d 648 (Iowa); Norland v. Mason City, 199 N.W.2d 316 (Iowa). The court used the motion here as a vehicle to resolve a factual issue which existed under the pleadings. This was error.

II. *Motion for Summary Judgment.* We are not involved with the question of whether the treatment philosophy of the American Council of the Blind or of the National Federation of the Blind should prevail. The legislature has entrusted the decision on questions of policy to the com-

mission. Before us is a petition alleging, not that the commission chose the wrong treatment philosophy, but that commission personnel misused funds and resources. The truth may be that a philosophical dispute lies behind this litigation, but we limit ourselves to the issues alleged in the petition and more specifically to whether summary judgment is appropriate to resolve those issues.

The question of whether summary judgment is proper involves two main parts: (a) the rules of law on misuse of public funds and resources by public officers and employees, and (b) the facts—whether under those rules the depositions and affidavits generate a fact issue for trial and in that connection what effect denial of discovery by plaintiffs has upon the decision.

■■■ (a) We are in the area of the law relating to alleged wrongful disbursements of public funds and wrongful use of public property. Generally, officials must disburse and use such funds and property only for public purposes. Love v. City of Des Moines, 210 Iowa 90, 230 N.W. 373; State v. Hinshaw, 197 Iowa 1265, 198 N.W. 634. Moreover, they must disburse and use such assets only for purposes contemplated by the authorizing act. Most statements of law are in terms of public funds. The editors state in 63 American Jurisprudence 2d, Public Officers & Employees, § 322 at 821:

> Public officers who have charge of public funds and public money are charged with the duty, as trustees, to disburse and expend the money for the purposes and in the manner prescribed by law. They are liable if they divert the trust funds from the governmental purposes for which they were collected.

And in 67 C.J.S., Officers § 118 at 409–410:

> A public officer may pay out public funds only where the law requires or permits him to do so, and only in the manner provided by the statute, where the statute directs the manner and method of payment. A public officer has no

right to give away public funds, and must deliver such funds or property to the public official or function for whom or which they were intended. Any public officer who wrongfully withholds or misappropriates public funds, or who pays or authorizes the illegal payment of public funds, is personally liable for such misappropriation or illegal payment. Thus it has been held that a public fund, dedicated for a special purpose, may not be diverted to any other purpose except by the authority which dedicated it.

Further in 67 C.J.S., Officers § 132 at 427:

> Courts should not discourage actions on the part of citizens to compel a strict observance by public officials of their duties, but, as far as authorized by law, should encourage such practice.

(b) Rule 237 of the Rules of Civil Procedure authorizes motions for summary judgment. Rule 237(c) states that the judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show no genuine issue of material fact exists. Rule 237(e) states that when a motion is supported as provided in this rule, the adverse party may not rest on the allegations or denials in his pleadings but must set forth specific facts showing that a genuine issue exists.

Defendants did not support their motion for summary judgment by their own affidavits, answers to interrogatories, or depositions. Instead, they relied mainly on the depositions they took of plaintiffs. In so doing, they picked up the pieces of competent evidence against themselves which exist in those depositions.

Defendants contend that those pieces of competent evidence do not constitute substantial evidence in support of plaintiffs' petition. We need not decide that question, for at the very time of the summary judgment proceeding plaintiffs were trying to obtain defendants' answers to interrogatories and to take defendants' depositions.

The trial court refused to let them do so and ruled on the summary judgment motion on the basis of defendants' discovery of plaintiffs.

A fundamental issue is involved here: whether a party against whom a summary judgment motion is made may discover and rely on testimony of his adversary, or whether such party must possess evidence of his own in support of his claim or defense. At one time, perhaps, he had to have his own evidence. See 23 Am.Jur.2d, Depositions & Discovery § 150 at 484–486. But that is not the modern view.

■ A party whose necessary evidence rests in the bosom or files of his adversary can place the adversary on the stand at trial and seek to extract the facts from him. Before the day of discovery procedure, not infrequently this was the only avenue open to a party. But summary judgment proceedings come before trial, and a party faced with a summary judgment motion may have to use one of the discovery devices or suffer adverse judgment. See rule 237(e) and (f). Hence the modern decisions hold that a party against whom a summary judgment motion is made should first be allowed to discover the facts if he desires. Among a host of cases, in jurisdictions with rules nearly identical to our own, are Johnson v. RAC Corp., 491 F.2d 510, 514 (4 Cir.) ("The plaintiff should have been afforded an opportunity, as the procedure followed in *Barnes* [v. A. Sind & Associates, 32 F.R.D. 39 (D.Md.)] suggests, to employ discovery, in order to counter, if he could, the facts set forth in the defendant's affidavit or to establish a factual basis for his action against the defendant; and this is especially so since the facts on which the defendant predicates its motion in this respect lie peculiarly within the knowledge of the defendant."); Washington v. Cameron, 133 U.S.App.D.C. 391, 411 F.2d 705, 710–711 ("It seems clear that this case must be remanded in order to accord appellant a fair hearing developed by discovery on the issue of emergency."); Surpitski v. Hughes-Keenan Corp., 362 F.2d 254, 255 (1 Cir.) ("If the court did not choose to hear witnesses, this may well have been within its province, but in such event plaintiff was certainly entitled to file such further interrogatories as were reasonably necessary and, if he wished, to take depositions."); Buchholtz v. Swift & Co., 62 F.R.D. 581, 595 (D.Minn.) ("But an accelerated summary judgment procedure must nevertheless await reasonable opportunity for the plaintiffs to complete discovery on the issues material to the Rule 56 [summary judgment] determination."); Penn Galvanizing Co. v. Lukens Steel Co., 59 F.R.D. 74, 80 (E.D.Pa.) ("It is error to grant summary judgment until a plaintiff has been given a reasonable opportunity to complete the discovery it seeks."); Kent v. Pittsburgh Press Co., 349 F.Supp. 622, 625 (W.D.Pa.) ("the opposing party cannot stand on the pleadings but is obligated to produce documents or make discovery to expose the genuine issue of material fact."); Philco Corp. v. Radio Corp. of America, 34 F.R.D. 453, 454 (E.D.Pa.) ("Philco has yet to depose any employees of GE. At this juncture of the case, in light of the status of the discovery proceedings, this Court feels that it would be not only unfair to the plaintiff but indeed patently erroneous to grant the present motion before plaintiff proceeds with its discovery."); Plouffe v. New York, N.H. & H.R.R., 160 Conn. 482, 280 A.2d 359; Schagrin v. Wilmington Medical Center, Inc., 304 A.2d 61 (Del.Super.); Firestone v. Time, Inc., 231 So.2d 862 (Fla.App.); Brick v. Wichita, 195 Kan. 206, 211, 403 P.2d 964, 969 ("the court should be sure that the party opposing the motion has a fair opportunity to use the discovery process to probe his opponent's mental state and to examine the facts his opponent has at hand"); Robbins v. Jersey City, 23 N.J. 229, 128 A.2d 673; Bartels v. Rubel Corp., 205 Misc. 673, 129 N.Y.S.2d 355; Republic Chemical Corp. v. United Sterling Corp., 205 Misc. 730, 118 N.Y.S.2d 368; Washington Trust Co. v. Fatone, 104 R.I. 426, 244 A.2d 848. See also Cook v. Cook, 259 Iowa 825, 146 N.W.2d 273. Thus under modern law, a party faced with a

summary judgment motion is entitled to discover the facts, although they may be in the possession of his adversary. But here plaintiffs had to combat the motion with one hand tied behind their back.

Defendants argue that courts will not ordinarily grant an injunction to restrain commission of crime or the exercise of discretion by public officers or the commission of insubstantial wrongs. But equity will enjoin commission of crime under proper circumstances. See State ex rel. Turner v. United-Buckingham Freight Lines, 211 N.W.2d 288 (Iowa). Moreover, the facts here may show misuse of commission resources without actual commission of crime. Equity will also enjoin public officers' acts which the facts show are beyond the area of discretion. See Batcheller v. Iowa State Highway Comm'n, 251 Iowa 364, 101 N.W.2d 30. And equity will enjoin wrongs which the facts show are substantial. See Rosendahl Levy and/or Drainage Dist. v. Iowa State Highway Comm'n, 171 N.W.2d 530 (Iowa).

Defendants' argument begs the question. How do we know whether an injunction is appropriate until we know the facts? The very purpose of the modern rule allowing prior discovery is to learn the facts so that the court can apply the appropriate substantive rule of law.

We thus hold that the trial court should have overruled defendants' motion for summary judgment and permitted plaintiffs to pursue discovery. We intimate no opinion, of course, on the merits of plaintiffs' allegations against defendants.

We have carefully considered defendants' motions to dismiss the appeal and to strike the reply brief. While we do not approve of plaintiffs' delay, under the circumstances disclosed by the record we overrule the motions.

Reversed.

All Justices concur except HARRIS, J., who dissents.

HARRIS, Justice (dissenting).

I respectfully dissent. I believe the trial court was right in entering summary judgment for defendants.

I. If we assume, in the first instance, the trial court erred in refusing to allow plaintiffs to take discovery of defendants, summary judgment was nevertheless proper. Ground 1–C of defendants' motion for summary judgment was:

"The relief sought was not within the power of the court to grant and the prayer of the petition is not sufficiently specific to authorize the court to grant any meaningful relief in any event, in that plaintiffs are asking the court to grant an injunction generally against the commission of criminal acts and controlling discretionary powers."

I believe the trial court was right in entering summary judgment on that ground. Plaintiffs' petition (paragraph 6) alleged resources of the Iowa Commission for the Blind were used for purposes not authorized in chapter 93, The Code, in two respects. It was claimed the resources were used to promote the activities of the National Federation of the Blind (NFB). It was also alleged such resources were converted to the private interests of officers and employees of the Iowa Commission for the Blind. Permanent injunction, the only relief sought, will not lie for either purpose.

Injunction will not lie to control discretionary matters of a governmental agency. Board of Directors Ind. Sch. Dist. v. Green, 259 Iowa 1260, 147 N.W.2d 854 and citations. A determination to cooperate with the efforts of the NFB and joining to seek its goals would fall within the ambit of § 601B.6, The Code. That section accords the Iowa Commission for the Blind extraordinarily broad discretion in such matters. It is no bar to the exercise of such discretion that public funds may be involved.

"A strict formula to determine public purposes for all time cannot be formulated, since the concept expands with the popula-

tion, economy, scientific knowledge, and changing conditions. As people are brought closer together in congested areas, the public welfare requires governmental operation of facilities which were once considered exclusively private enterprises, and necessitates expenditure of tax funds for purposes which, in an earlier day, were not classified as public. What is a public purpose for which public funds may be expended is not a matter of exact definition, and the line of demarcation is not immutable or incapable of adjustment to changing social and economic conditions that are properly of public and governmental concern.

" * * * [A] constitutional prohibition against lending, pledging, or granting the funds, credit, property, or things of value of the state, or of any political corporation thereof, is not intended to prevent the granting or lending where necessary in the reasonable exercise of the police power. It is the essential character of the direct object of the expenditure which must determine its validity, and not the magnitude of the interests to be affected, or the degree to which the general advantage of the community, and thus the public welfare, may be ultimately benefited by their promotion. * * *." 63 Am.Jur.2d., Public Funds, § 59, pages 447–448.

The only other allegation against defendants asserts the commission of crimes. Injunction is inappropriate for such a purpose in the instant case.

It seems universally agreed injunction is inappropriate when sought only to restrain criminal acts. The theory of the rule is sanctions imposed by criminal courts and the remedies supplied by indictment and prosecution are deemed adequate. 4 Pomeroy's Equity Jurisprudence, § 1347, pages 949–950; Modern Equity by H. G. Hanbury, pages 597–601; 27 Am.Jur.2d, Equity, § 57, pages 578–580. A recognized exception under these authorities arises where the criminal acts constitute a nuisance. The State sometimes, after proving repeated violations, may obtain an injunction against further violations. State ex rel. Turner v.

United-Buckingham F.L., Inc., 211 N.W.2d 288 (Iowa 1973). See also State ex rel. Turner v. Younker Brothers, Inc., 210 N.W.2d 550 (Iowa 1973).

The exception on a nuisance theory after repeated violations has been granted in favor of law enforcing agencies where it became an unfair burden to the public to be required to prosecute numerous individual violations. We have never granted such an injunction to individual private claimants. See 59 Am.Jur.2d, Parties, § 30, pages 382–386. In the instant case the attorney general resists the granting of an injunction and appears in this appeal in behalf of all defendants.

II. I believe there was ample basis under the foregoing authorities to support entry of summary judgment. An examination of defendants' discovery depositions adds great support to the trial court's ruling. However the majority seems to conclude we should wholly ignore, as I have in the preceding division, all discovery depositions taken by defendants. It is complained reciprocal rights to discover defendants were denied. But the discovery sought by plaintiffs was unrelated to the discovery undertaken by defendants. I believe the trial court acted within its proper discretion in denying plaintiffs' request to take discovery of defendants.

Trial courts are accorded broad but not unlimited discretion to control, limit, or prevent discovery in order to promote the administration of justice. Jones v. Swanger, 167 N.W.2d 702, 703 (Iowa 1969) and citations. See also 4 Moore Federal Practice, § 1601, page 18.

Defendants' discovery was directed not so much toward what plaintiffs could prove as it was toward what they claimed in their petition. Plaintiffs' requested discovery, on the other hand, was sought in the hope of finding whether they had a lawsuit. I would adopt and apply the following rule:

"The right to require a disclosure is generally limited to instances where there is a real cause of action pending or imminent,

and the court is entitled to the information in aid of proper judicial proceedings. The applicant must show an existing cause of action or defense in aid of which discovery is sought, and *disclosure cannot be required if the action or the defense itself cannot be maintained. That is, a party is not entitled to a discovery to enable him to ascertain whether he has a cause of action.*

" * * *

" * * * While the precise line of differentiating the cases in which an examination will be allowed from those in which it will be denied because of their being merely 'fishing expeditions' is rather elusive, it may be said in general that *to entitle a party to an examination, he should be able to convince the court that prima facie he has a cause of action or that there is a reasonable basis for a belief that a cause of action exists in his favor.* Discovery does not sanction impertinent intrusion, and there must be a showing of good faith and probable cause. However, the claim that a party seeking discovery is engaged upon a 'fishing expedition' is not, and under no circumstances can be, a valid objection to an otherwise proper attempt to utilize the discovery statutes, * * *." (Emphasis added). 23 Am.Jur.2d, Depositions and Discovery, § 150, pages 484–486.

In Wiles v. Myerly, 210 N.W.2d 619, 625–626 (Iowa 1973) we pointed out companion rules for perpetuating testimony do " * * not provide a method of discovery to *determine whether cause of action exists,* and, if so, against whom action should be instituted." (Emphasis added). I believe a trial court has a corresponding right, under the above rule, to deny plaintiffs use of discovery to determine whether a cause of action exists merely by filing a petition unless there is a reasonable basis to believe there is such a cause of action.

Accordingly I differ with the majority in its holding: " * * * But here plaintiffs had to combat the motion with one hand tied behind their back." I believe the trial court acted within its proper discretion in allowing defendants to discover plaintiffs as to the nature and basis for their claim. Under the circumstances shown it does not offend the propriety of this ruling that the trial court at the same time denied plaintiffs the right to dredge for a lawsuit by way of their own depositions.

The trial court characterized plaintiffs' application for discovery as a "fishing expedition." Such characterization is apt to fall on deaf judicial ears for the reason this characterization was for decades used by persons who opposed all discovery. It is only a coincidence the characterization is now used to describe situations where one is not actually seeking to gather evidence but only endeavoring to find out whether they have a lawsuit.

III. We should entirely ignore all evidence which is hearsay and incompetent. Sherwood v. Nissen, 179 N.W.2d 336 (Iowa 1970). With such evidence ignored my reading of the record reveals no remaining substantial factual dispute.

Anything remaining is so insubstantial and trifling as to fall under the rule demanding it should be ignored under the maxim *de minimis non curat lex.* Rosendahl Levy v. Iowa State Highway Commission, 171 N.W.2d 530 (Iowa 1969); State v. Hinshaw, 197 Iowa 1265, 198 N.W. 634.

The case presents a graphic example of why trial courts should be accorded discretion to control, limit or prevent discovery under the rule announced in Jones v. Swanger, supra. Defendants' depositions of plaintiffs disclose plaintiffs' action to be a mere dispute as to which of two philosophies should govern the Iowa Commission for the Blind. We should not furnish our courts as the forum for any such dispute. Neither should we allow our discovery procedures to be employed for such a purpose when no cause of action exists. I would affirm.