# IN THE COURT OF APPEALS OF IOWA

No. 25-1077
Filed April 15, 2026

**A-Line TDS, Inc.,**
Plaintiff–Appellant,

v.

**Frank Martuscelli,**
Defendant–Appellee.

Appeal from the Iowa District Court for Black Hawk County,
The Honorable Andrea J. Dryer, Judge.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS**

Brandon M. Schwartz and Michael D. Schwartz of Schwartz Law Firm,
Oakdale, Minnesota, attorneys for appellant.

Adam J. Babinat and Luke M. Zahari of Redfern, Mason, Larsen & Moore,
P.L.C., Cedar Falls, attorneys for appellee.

Considered without oral argument
by Tabor, C.J., and Badding and Sandy, JJ.
Opinion by Sandy, J.

**SANDY, Judge.**

A-Line TDS, Inc. (A-Line) appeals the district court's order granting Frank Martuscelli's motion for summary judgment. A-Line argues the district court abused its discretion by ruling on Martuscelli's summary judgment motion before it ruled on A-Line's motion to compel, and erred in granting summary judgment for Martuscelli. We affirm, determining the district court did not abuse its discretion or commit any error of law. We award Martuscelli his reasonable attorney fees and remand for the district court's determination of appropriate appellate attorney fees.

## BACKGROUND FACTS AND PROCEEDINGS

Martuscelli signed a non-compete agreement with his employer, A-Line, in May 2015. Before that, Martuscelli worked for Transformer Disposal Specialists, Inc., a company which A-Line later purchased. The non-compete agreement with A-Line limited Martuscelli's ability to compete with A-Line during his employment and for a period thereafter due to Martuscelli's technical expertise in "the business of providing decommissioning and buying, collecting, processing, recycling and selling scrap metal, oil, and oil filled electrical equipment, and in the business of removal of all equipment and structures associated therewith, and in the business of selling surplus assets."

Under the non-compete agreement and relevant to this suit, Martuscelli agreed he would not "engage in the business of, or be employed by, or perform services for, any firm . . . similar to [A-Line]" for a period of three years after the end of his employment at A-Line. Under a non-inducement covenant, he also agreed not to "induce, either directly or indirectly, any employee, agent, independent contractor, supplier, customer or any other person or organization to terminate or alter its relationship with

A-Line" during that same period. Lastly, the non-disclosure covenant provided that Martuscelli would not "directly, or indirectly, use for [Martuscelli] or use for, or disclose to, any party other than A-Line, any secrets or confidential information or data regarding the business of A-Line" at any time during or after his employment with A-Line. In furtherance of that non-disclosure provision, Martuscelli agreed that he would

> deliver to A-Line all property belonging to A-Line, including but not limited to all memoranda, notes, records, plans, or other documents made or compiled by, delivered to, or otherwise acquired by, [Martuscelli], concerning costs, uses, methods, designs, applications, or purchasers of products sold by or brokered by A-Line or any confidential products, process, system, or method used, developed, acquired or investigated by A-Line.

Martuscelli's employment with A-Line ended on March 28, 2018. On that date, he signed a resignation agreement which reaffirmed Martuscelli's "continuing obligations" under the non-compete agreement. It also required Martuscelli to "turn over his cell phone and all numbers included therein to [A-Line] upon execution of this Agreement." An A-Line employee then drove Martuscelli to a local Verizon store where a Verizon employee, at Martuscelli's direction, transferred "some, but not all, of the data" on Martuscelli's old cell phone to a new cell phone with a new number.[1] The district court found that Martuscelli did not personally place any of the old phone's data onto the new phone.

The aforementioned non-compete and non-solicitation covenants of the non-compete agreement expired on March 28, 2021. On April 8, 2024, over six years after the end of his employment with A-Line, Martuscelli

---

[1] Martuscelli's old phone number was both his personal and work phone number during his employment with A-Line. He had no other phone number until turning over his old phone and phone number to A-Line.

began employment with Sunbelt Solomon Services, LLC (Sunbelt). Sunbelt is a business competitor to A-Line.

The district court summarized Martuscelli's relevant communications after he began his employment at Sunbelt as follows:

> After he began working for Sunbelt, [Martuscelli] texted or called Thomas Dougherty, a former employee of [A-Line]. [Martuscelli] had known Dougherty since the early 2000s, when Dougherty worked as a truck driver for Transformer Disposal Specialists. They also raced cars together.

> [Martuscelli] contacted Dougherty to see if Dougherty would consider working for Sunbelt. Dougherty was not interested in working for Sunbelt.

> [Martuscelli] also asked Dougherty for information about a material handling system for which [A-Line] owns the U.S. patent. Dougherty had used the tool and knew how it worked.

> Photographs, drawings, descriptions, and details of [A-Line]'s patented material handling system are publicly available by means of a U.S. patent record search.

> After he began working for Sunbelt, [Martuscelli] called or texted another former employee of [A-Line], Donald Conrad, whom [Martuscelli] had known since working for Transformer Disposal Specialists, to see if Conrad would consider working for Sunbelt. [Martuscelli] arranged for a meeting between Conrad and Sunbelt representatives. Conrad met with Sunbelt representatives. Sunbelt offered Conrad employment, but Conrad did not accept it.

> [Martuscelli] also asked Conrad about the material handling system for which [A-Line] owns the U.S. patent.

> [Martuscelli] has not replicated or attempted to replicate the material handling system for which [A-Line] owns the U.S. patent.

> After he began working for Sunbelt, [Martuscelli] called or texted Mike Pendergrass, a representative of Entergy Arkansas, Inc., a customer of [A-Line], to see if Entergy Arkansas, Inc. would do business with

Sunbelt. [Martuscelli] had known Pendergrass since 2013 when [Martuscelli] worked for Transformer Disposal Specialists

A-Line filed its petition against Martuscelli on May 30, 2024. It raised three claims against Martuscelli. The first claim was for breach of contract with A-Line alleging that Martuscelli used A-Line's information, "including trade secrets, confidential information, and data" as well as sharing the same with Sunbelt. In its tortious-interference-with-contract claim, A-Line alleged that Martuscelli "intentionally and improperly interfered with A-Line's customer contracts by using A-Line's information, including trade secrets, confidential information, and data that Martuscelli had and provided to Sunbelt to improperly compete with A-Line." A-Line broadly claimed that Martuscelli's actions under those counts had "damaged" it. Lastly, A-Line raised a tortious-interference-with-prospective-advantage claim, alleging that Martuscelli interfered with A-Line's prospective contractual and business relationships by "using A-Line's information, including trade secrets, confidential information, and data," which A-Line claims "caused the relationships to fail to materialize."

Martuscelli moved for summary judgment, arguing there are no undisputed material facts. A-Line opposed summary judgment under Iowa Rule of Civil Procedure 1.981(6) and additionally moved to compel further discovery. In June 2025, the district court granted Martuscelli's motion for summary judgment. The court concluded:

> The record lacks evidence from which the trier of fact could find [A-Line] suffered financial losses resulting from the March 2018 transfer of data from [Martuscelli]'s old cell phone to the newer cell phone [Martuscelli] has used since March 2018.

> The record lacks evidence from which the trier of fact could find [Martuscelli] improperly interfered with a contract [Martuscelli] knew existed between [A-Line] and a third party.

5

> The record lacks evidence from which the trier of fact could find [Martuscelli] improperly interfered with a prospective contractual or business relationship between [A-Line] and a third party.

A-Line now appeals the district court's order.

## ERROR PRESERVATION

A-Line initially argues that the district court abused its discretion in ruling on Martuscelli's motion for summary judgment before first ruling on its motion to compel. Martuscelli challenges error preservation on this issue, noting that the ruling on summary judgment did not address A-Line's motion to compel and that A-Line failed to move to enlarge following the ruling.

"It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Under rule 1.904, a party may file a motion to allow the district court to "amend or enlarge its findings and conclusions, and to enable the court to modify its judgment or enter a new judgment." *Id.* at 538. But "[w]hen a ruling is strictly limited to a question of law, a motion to reconsider amounts to nothing more than a rehash of the legal question." *Id.* Thus, a subsequent hearing raising the same legal question" would "serve[] little purpose" and "is merely repetitive." *Id.*

In opposing summary judgment, A-Line expressly argued that summary judgment would be inappropriate due to its pending motion to compel and that further discovery was required more broadly under rule 1.981. In its view, further discovery was "directly relevant to the issues of the breach of the resignation agreement and confidential release and the resulting damages." A-Line asserts that by rejecting A-Line's arguments against summary judgment, the court also ruled on A-Line's insistence that

further discovery was necessary. Because A-Line did request that the district court continue or deny the motion for summary judgment in favor of further discovery and the court nonetheless granted summary judgment, we assume without deciding that A-Line preserved error and proceed to the merits on this issue.

Martuscelli further contends that A-Line failed to preserve error on its claim that it is entitled to injunctive relief. We disagree. A-Line sought injunctive relief in its petition. Martuscelli moved for summary judgment "on all claims currently pending against him." In opposing summary judgment, A-Line argued that the disputed facts require further proceedings to resolve all claims, including its claims to injunctive relief. The district court then granted summary judgment on all claims. Error is preserved.

## STANDARD OF REVIEW

We review the district court's discovery rulings for abuses of discretion, overturning those rulings only upon determination that the court's discretion was "exercised on clearly untenable grounds or to an unreasonable extent." *Miller v. Cont'l Ins.,* 392 N.W.2d 500, 503 (Iowa 1986).

Rulings on motions for summary judgment are reviewed for correction of legal error. *Ratcliff v. Graether*, 697 N.W.2d 119, 123 (Iowa 2005). Summary judgment should be granted only where "there is no genuine issue of material fact and . . . the moving party is entitled to a judgment as a matter of law. There is no fact issue if the only dispute concerns the legal consequences flowing from the undisputed facts." *Id.* (citation omitted).

## DISCUSSION

A-Line presents two primary arguments to us on appeal. First, it argues that the district court abused its discretion by granting Martuscelli's

summary-judgment motion before first considering A-Line's motion to compel further discovery, which A-Line contends would have enabled it to defend against Martuscelli's summary-judgment motion. Second, A-Line urges that the district court erred by granting Martuscelli's summary-judgment motion upon finding there were no genuine issues of material fact.

## I.    Motion to Compel

Following Martuscelli's motion for summary judgment, A-Line opposed summary judgment under rule 1.981(6) and moved to compel discovery, requesting a copy of Martuscelli's current phone contacts list, employment documents with Sunbelt, various communications with customers and former employees of A-Line, and other records, including information about site visits he made for Sunbelt. The district court granted summary judgment without ruling on that motion to compel.

Although a district court is permitted discretion in ruling on discovery issues, *see Miller*, 392 N.W.2d at 503, that discretion has limits, *see Carter v. Jernigan*, 227 N.W.2d 131, 135 (Iowa 1975) ("[A] party against whom a summary judgment motion is made should first be allowed to discover the facts if he desires."). Our supreme court has repeatedly limited that discretion when assessing the propriety of a district court's discovery rulings when summary judgment is at issue. *See Carter*, 227 N.W.2d at 135; *Moser v. Thorp Sales Corp.*, 312 N.W.2d 881, 891 (Iowa 1981); *Iowa State Dep't of Health v. Hertko*, 282 N.W.2d 744, 755 (Iowa 1979).

Generally, "rulings on motions relative to discovery should be made before a summary judgment is considered." *Miller*, 392 N.W.2d at 503. When a district court is considering whether to delay a summary-judgment ruling for further discovery, it must consider whether "the facts which plaintiffs must prove are peculiarly within the knowledge of defendants." *See id.* Iowa

Rule of Civil Procedure 1.981(6) is a mechanism by which a party opposing summary judgment can "set forth by affidavit the reasons why it cannot proffer evidentiary affidavits and what additional factual information is needed to resist the motion" for summary judgment. *See Good v. Tyson Foods, Inc.*, 756 N.W.2d 42, 46 (Iowa Ct. App. 2008) (citation omitted). This requirement under rule 1.981 is meant to ensure that the additional discovery could reasonably affect the case outcome and that the requested continuance is specific and justified rather than a dilatory tactic. *See Bitner v. Ottumwa Cmty. Sch. Dist.*, 549 N.W.2d 295, 301–02 (Iowa 1996). The opposing party should be able to explain "how those facts are reasonably expected to create a genuine issue of material fact." *See id.*

In its rule 1.981 argument, A-Line asserted that the information it sought to compel was "directly relevant to the issues of the breach of the Resignation Agreement and Confidential Release and the resulting damages." A-Line contended that disclosure of Martuscelli's contacts and communications would reveal "additional breaches [of the resignation agreement] and likely more damages." But these vague and general justifications are not sufficient for continuing a summary-judgment ruling under rule 1.981(6). *Godfredson v. Ford Motor Co.,* No. 11-1754, 2012 WL 3026788, at *4–5 (Iowa Ct. App. July 25, 2012) ("[S]uspicion and conjecture are insufficient to support [a] motion to compel."). Most notably, the motion to compel provided no explanation about what damages further discovery would reveal. Even in its briefing on appeal, A-Line simply states that further discovery would "vet out the timing of lost projects with Mr. Martuscelli's contacts and the corresponding lost projects and resulting damages." Failing to describe how a continuance could reasonably reveal damages, *see Bitner*, 549 N.W.2d at 301, A-Line's motion to compel served as

a request for the company to engage in a fishing expedition whereby it would cross-reference its own customer records with Sunbelt's customer records.

We see no abuse in discretion in the district court's failure to rule on or grant A-Line's motion to compel.

## II.    Summary Judgment

Summary judgment is granted only when the requesting party has established as a matter of law that the party is entitled to judgment on the merits. Iowa R. Civ. P. 1.981. "If the pleadings, depositions, answers to interrogatories, admissions on file and any affidavits show no genuine issue of material fact, summary judgment is proper." *Miller*, 392 N.W.2d at 503. But if any "genuine question of material fact remains, the motion must be denied." *Id.*

To prevail on a claim for breach of contract, a plaintiff must prove "(1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach." *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998). To prevail on a claim for intentional interference with a contract, the plaintiff must prove "(1) [the] plaintiff had a contract with a third-party; (2) [the] defendant knew of the contract; (3) [the] defendant intentionally and improperly interfered with the contract; (4) the interference caused the third-party not to perform, or made performance more burdensome or expensive; and (5) damage to the plaintiff resulted." *Green v. Racing Ass'n of Cent. Iowa*, 713 N.W.2d 234, 243 (Iowa 2006) (citation omitted). And to show intentional interference with a prospective contractual or business relationship, a plaintiff must prove "(1) [a] prospective contractual or business relationship;

(2) the defendant knew of the prospective relationship; (3) the defendant intentionally and improperly interfered with the relationship; (4) the defendant's interference caused the relationship to fail to materialize; and (5) the amount of resulting damages." *Blumenthal Inv. Trs. v. City of West Des Moines,* 636 N.W.2d 255, 269 (Iowa 2001) (citation omitted).

For each of its claims, A-Line was required to assert that it suffered damages. As we alluded to above, A-Line failed to assert any specific theory as to how it suffered damages from Martuscelli's purported breaches. A-Line, appearing to recognize this problem, simply points to the general boilerplate language in the resignation agreement which states that breaches of the agreement "would cause irreparable harm that cannot be adequately compensated with money damages"—justifying its requested injunction against Martuscelli. But if the harm A-Line suffered was so severe that not even money damages could mend it, A-Line should be able to clearly define that irreparable harm. Indeed, A-Line itself admitted "[i]t's very hard to say" whether it suffered financial harm or if it had lost any contracts due to Martuscelli's employment with Sunbelt. It instead argues that a different entity, Midwest Transformer "could very well have lost some transformer orders."

To demonstrate harm, A-Line now generally asserts that it "lost out on temporally isolated opportunities" to solicit clients for business, citing *LS Power Midcontinent, LLC v. State* for the proposition that our courts recognize those purported missed opportunities as irreparable harm. *See* 988 N.W.2d 316, 338 (Iowa 2023). This case can be easily distinguished from *LS Power*. At that time, Iowa Code section 478.16(2) (2023) blocked "would-be competitors in the electric transmission market . . . from bidding against existing Iowa operators on future projects." *See id.* at 322. The *LS Power*

11

court enjoined the statute pending the resolution of LS Power's claims at trial. *Id.* at 338. This permitted LS Power to submit bids for contracts that it would otherwise have been statutorily prohibited from doing so. *See id.* The statute's prohibition made the harm to LS Power inevitable by restricting its single-subject, title-clause, and equal-protection rights under the Iowa Constitution through "rent-seeking, protectionist," and "anticompetitive" terms, making the statute's inflationary effects on the Iowa electric market "common sense" and supported by research data. *See id.*

Unlike LS Power, A-Line is not restricted by an anticompetitive statute that our supreme court described as "quintessentially crony capitalism." *See id.* A-Line is instead faced with an essential element of modern capitalism: market competition. Martuscelli is experienced with attracting potential customers to his transformer-decommissioning employers. Sunbelt, no doubt, hired him for his experience in that role. And absent a particularized theory of damages arising from Martuscelli's purported breaches, summary judgment is appropriate here. A-Line's inability to articulate a theory of past harm or damages makes its claims of future harm unlikely as well.[2]

The district court did not err in granting summary judgment.

---

[2] A-Line argues that under *Hockenberg Equipment Co. v. Hockenberg's Equipment & Supply Co. of Des Moines, Inc.*, future harm is presumed when a party concedes that a breach of an agreement "would result in irreparable harm to the plaintiff and entitle it to an injunction against the defendants." 510 N.W.2d 153, 158 (Iowa 1993). But there, a jury expressly found that the defendants had breached the contract at issue, and the defendants also "conceded breaching the settlement agreement." *Id.* at 158. No such finding or concession applies here.

## III.    Appellate Attorney Fees

Martuscelli requests an award of his appellate attorney fees. "When judgment is recovered upon a written contract containing an agreement to pay an attorney fee, the court shall allow and tax as a part of the costs a reasonable attorney fee to be determined by the court." Iowa Code § 625.22 (2024). The parties' resignation agreement contained a provision stating, "The prevailing party in any legal action brought to enforce this Agreement shall be entitled to reasonable attorney fees and costs." Pursuant to that provision, we agree that Martuscelli shall be awarded his reasonable attorney fees. Because Martuscelli has not filed any affidavit in support of an award of appellate attorney fees, we remand this issue to the district court for determination of the appropriate amount of appellate attorney fees upon Martuscelli's submission of a fee affidavit.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**